TA-CO-11/10/01

ELK 1330.13A
October 8, 1997
Attachment A

## REQUEST FOR ADMINISTRATIVE REMEDY
### INFORMAL RESOLUTION FORM
### FCI, ELKTON, OHIO

-------------------------------------------------------------------------

Bureau of Prisons Program Statement 1330.13 "Administrative Remedy Procedures for Inmates", states that "before an inmate seeks formal review of a complaint he must try to resolve the complaint informally by presenting it to a staff member." The staff member must also try to resolve the complaint "informally" before the inmate will be given an Administrative Remedy Form.

INFORMAL RESOLUTION NUMBER: CB 00 1161

INMATE'S NAME: MALDONADO WILKINS    NO. 19305-069 UNIT CA

1. Specific Complaint: See Attached copy of Cop-out And Computation Sheet

2. Relief Requested: To Be Issued A BP-9 Form

3. Date/Time Complaint received from inmate: 11/16/01-2³⁰ pm

4. Date/Time Informally discussed with inmate: 11-20-01  300ᴾ

5. Staff Response: In response to your request that is you request has been applied toward you state of Puerto Rico Sentence Awarding this credit would be contrary to 5880.28 of the Sentence Comp Manual & T 18 3585B (Prior Custody Credits) The time you were in Fed Custody was secondary custody due / being borrowed on Fed Writ from a state.

6. Date Administrative Remedy provided: 12/

7. Informal Resolution was/(was not) accomplished.

_[signature]_ Wilkins Maldonado    11-20-01
Inmate's Signature/Register No.    Date

_[signature]_    11-20-01  300ᴾ
STAFF MEMBER'S NAME & TITLE    DATE

_[signature]_ Castle, M. (AUM)    12/7/01
UNIT MANAGER'S SIGNATURE    DATE
The Unit Manager, by signing above, certifies that good faith efforts were attempted to resolve this inmate's complaint.

**DISTRIBUTION**: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint is not informally resolved, forward original resolution form, attached to administrative remedy, to the Administrative Remedy Clerk.

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GARCIA, MALDONADO W.    19305-069    CA    ELKTON
　　　LAST NAME, FIRST, MIDDLE INITIAL　　REG. NO.　　UNIT　　INSTITUTION

**Part A– INMATE REQUEST** THE COMPUTATION OF MY TIME BEFORE SENTENCING IS INCORRECT. A REVIEW OF THE RECORD WILL REVEAL THAT IN THE PLEA AGREEMENT THAT I SIGNED WITH THE GOVERNMENT ON AUGUST 29, 2000, Item 13 IN PERTINENT PART THAT... "THE PARTIES STIPULATE THAT THE DEFENDANT SPENT TIME IN CUSTODY OF THE COMMONWEALTH OF PUERTO RICO AS A RESULT OF THE OFFENSE CHARGED IN COUNT ONE..." (SEE EXHIBIT ONE) THE P.S.I WILL REVEAL UNDER SECTION 8 THAT I HAVE BEEN HELD SINCE NOVEMBER 3, 1999 UNTIL PRESENT TIME IN REFERENCE TO THIS CHARGE. (SEE EXHIBIT 2) THE TIME FROM NOVEMBER 3, 1999 THROUGH 8-19-00. SHOULD BE CREDITED.

12/12/01
DATE

Willins Maldonado Garcia
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

1/4/2002
DATE

R. C. Wilson
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE　　CASE NUMBER: 256297-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL　REG. NO.　UNIT　INSTITUTION

SUBJECT: _____

12-20-01
DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN　　Printed on Recycled Paper　　BP-229(13) APRIL 1982

REQUEST FOR ADMINISTRATIVE REMEDY
PART-B - RESPONSE

Remedy I.D.:  256292-F1

This is in response to your Request for Administrative Remedy, dated December 20, 2001, in which you request credit for time spent while in the custody of the Commonwealth of Puerto Rico. You allege that in your federal sentencing " Plea Agreement " Article Number 13,  that parties stipulate the defendant spent time in custody of the commonwealth of Puerto Rico, and as result of the offense charged in count one,  you are entitled to credit from November 3, 1999, through August 19, 2000.

Investigation into your request reveals that you were arrested by state authorities in the Commonwealth of Puerto Rico for State charges, on August 8, 1997.  You were sentenced to a term of two years on
March 24, 1998, expiring on  March 12, 1999.  On March 28, 1999, just sixteen days after you released,  you were arrested by state authorities and sentenced to a two-year term on September 23, 1999.  While serving this sentence in the Puerto Rico Correctional Facility, you were borrowed on writ from State authorities on November 3, 1999 by the United States Marshals for federal charges. Your were ordered detained by federal authorities without bail until sentencing on federal charges. On August 19, 2000, you paroled from your Puerto Rico sentence, however, since you were already in federal custody via Federal Writ of Habeas Corpus and  awaiting sentencing, you were not returned to State authorities, but remained in federal custody with prior custody credit awarded toward your federal sentence from August 19, 2000 through January 7, 2001.  Your federal sentence of nine years was imposed on January 8, 2001, in the District of Puerto Rico, by the Honorable Perez-Gimenez. Your federal sentence began on January 8, 2001, with prior custody credit awarded from August 19, 2000, the date you paroled from your state sentence through January 7, 2001.  Awarding additional credit would be dual credit and contrary to statutory provisions.  Program Statement 5880.28, Sentence Computation Manual CCCA and Title 18: 3585 (b) 1 & 2 which states:

> **(b)    Credit for prior custody.**  " A defendant shall be given credit toward the service of a term of  imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;     that has not been credited against another sentence."

Based on these findings, your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Northeast Region, U.S. Custom House - 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania 19106, within twenty (20) calendar days from the date of this response.

_____          11/4/2002
R. L. Morrison, Warden                              Date

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: GARCIA MALDONADO W.    19305-069    CA    ELKTON
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL**

Appellant believed in the Quid Pro Quo consideration of the plea agreement that he would received credit for the entire time he spent in Federal Custody. Appellant believes he has the right to be credited with the entire time.

1-17-02
DATE

_William Waldonado_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**


DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 250292-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION ELK

SUBJECT: _____

01-22-02
DATE    Previous editions not usable    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN    BP-230(13)
APRIL 1982

**MALDONADO-GARCIA, WILKINS**
Reg. No. 19305-069
Appeal No. 256292-R1
Page One

---

### Part B - Response

You appeal the decision by the Warden at FCI Elkton to deny you prior custody credit for time spent in the custody of the Commonwealth of Puerto Rico. You claim you are entitled to this credit due to a plea agreement.

Our records reveal that you were arrested by the Commonwealth authorities in Puerto Rico for violation of a controlled substance law and sentenced to two years on April 30, 1998. This sentence expired on March 12, 1999. You were again arrested by the Commonwealth of Puerto Rico on March 28, 1999, for attempted theft. You pled guilty to this charge on September 23, 1999 and received a sentence of two years. You were paroled from this sentence on August 19, 2000. On November 3, 1999, the U.S. Marshals Service "borrowed" you from the Commonwealth of Puerto Rico Correctional Facility pursuant to a federal writ requiring your appearance in U.S. District Court for the District of Puerto Rico. On August 29, 2000, you pled guilty to counts one and two in Criminal case 99-CR-322-01 (PG). On January 8, 2001, you received a total federal sentence of 108 months imprisonment.

Your plea agreement stated, in part, "that defendant shall administratively receive credit pursuant to 18 U.S.C. § 3585(b) for any time spent in official detention-including time spent in the custody of the Commonwealth of Puerto Rico-as a result of the offenses charged in Count One and Two, provided that such official detention has not been credited against another sentence." Section 3585(b) provides, "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence."

The credit you are requesting was credited toward your Puerto Rico sentence, and therefore, cannot be credited to your federal sentence. Your sentence has been computed correctly. Accordingly, your appeal is denied.

(Continued on page two)

**MALDONADO-GARCIA, WILKINS**
Reg. No. 19305-069
Appeal No. 256292-R1
Page Two


If you are dissatisfied with this response, you may appeal the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.
Washington, D.C. 20534, within 30 calendar days of the date of
this response.


Date: February 20, 2002            M. E. RAY
                                   Regional Director

## 1008   21 FEDERAL REPORTER, 3d SERIES

bar reformation, we agree with the district court's findings and conclusions.

AFFIRMED.



Randy BROWN, Petitioner-Appellant,

v.

W.A. PERRILL, Warden, and U.S. Bureau of Prisons, Respondents-Appellees.

No. 93-1381.

United States Court of Appeals, Tenth Circuit.

April 11, 1994.

Defendant was convicted of conspiracy to distribute heroin. Thereafter 562 days of jail credit were retracted. Prisoner brought habeas corpus action. The United States District Court of the District of Colorado, Zita L. Weinshienk, J., denied petition and appeal was taken. The Court of Appeals, Seth, Circuit Judge, held that period commencing on date state authorities surrendered defendant to federal authorities, to stand trial on conspiracy case, until state sentence expired, was required to be credited against sentence imposed upon defendant following conviction for conspiracy, even though time had been counted toward fulfillment of state prison term and had consequently been counted twice.

Reversed and remanded.

Opinion on rehearing, see 1994 WL 376411.

1. Criminal Law ⚖1216.1(2)

Interval commencing on date that state authorities released defendant to federal authorities, so that he could stand trial on charges of conspiracy to distribute heroin, and ending on date his state sentence expired, was required to be credited against defendant's sentence following his conviction on that charge, even though it was claimed that state had given defendant credit for that period against state sentence, and that granting of federal credit would result in "double-counting"; federal statute mandated credit for time spent in custody in connection with offense for which sentence was imposed, and state's crediting of time was irrelevant. 18 U.S.C.(1982 Ed.) § 3568.

2. Criminal Law ⚖1216.1(2)

Reduction of jail time credit is not within discretionary powers of prison authorities, but more properly lies with sentencing court.

Randy Brown, pro se.

James R. Allison, Interim U.S. Atty., and Elizabeth J. Ruffing, Sp. Asst. U.S. Atty., Denver, CO, for respondents-appellees.

Before LOGAN, SETH, and BARRETT, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

The facts in this case are essentially undisputed. On March 9, 1983, Appellant was released from a California state prison to federal authorities on a writ of habeas corpus ad prosequendum. At the time of release, Appellant was serving a sentence on a state conviction for sale of heroin. Appellant remained in federal custody while awaiting trial on federal charges of Conspiracy to Distribute Heroin until October 5, 1984 when he was released on bail. During this period Appellant's state sentence expired on September 23, 1984. Appellant returned to federal custody on April 2, 1985 and was finally convicted on the conspiracy charge on June 4, 1985.

At sentencing on the federal conviction, Appellant was awarded jail time credit for all of the time spent in federal custody prior to sentencing. At some later date approximately 562 days of jail credit were retracted.

## BROWN v. PERRILL   1009
Cite as 21 F.3d 1008 (10th Cir. 1994)

These days coincide with the period beginning on March 9, 1983 until September 23, 1984, the date upon which Appellant's state sentence terminated. Subsequently, Appellant exhausted his administrative remedies challenging the propriety of the jail credit reduction and filed the habeas corpus action underlying this appeal. The magistrate assigned to this matter recommended denial, and the district court agreed. This appeal followed.

[1] We are mindful that because Appellant is proceeding pro se he is to be held to less stringent standards than professional attorneys, and we will liberally construe his pleadings. See Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir.1988). After reading his brief, we find that the dispositive issue raised by Appellant is whether the district court relying on Bruss v. Harris, 479 F.2d 392 (10th Cir.1973), erroneously determined that he was not entitled to "double credit" pursuant to 18 U.S.C. § 3568.

In Bruss petitioner was arrested on state charges and then released to federal authorities pursuant to a writ of habeas corpus ad prosequendum. On July 2, 1971, petitioner pled guilty to federal charges, was sentenced to three years, and was immediately returned to state custody. Thereafter, he pled guilty to the state charges, was sentenced to two years to run concurrently with the federal sentence, and returned to federal prison on October 28, 1971. The issue in Bruss was whether the time spent in state custody between July 2 and October 28 should be credited to the petitioner's federal sentence. We held that because petitioner was credited by the state for the time in question, he was not entitled to "double credit" on his federal sentence. Bruss, 479 F.2d at 394. We further opined that the "jail time in question was not spent in connection with the offense or acts for which the federal sentence was imposed, and, consequently, he is not entitled to credit against the federal sentence." Id.

The situation presented in the case before us is different from Bruss in several crucial ways. First, during the time period from March 9, 1983 to September 23, 1984, Appellant was in federal custody, not in state custody as was the scenario in Bruss. Second,

the issue of whether the time spent in federal custody pursuant to the writ of habeas corpus ad prosequendum was not addressed in Bruss; rather, we were concerned in that case with the period of time petitioner was in custody after the writ of habeas corpus ad prosequendum was no longer in effect. We must conclude that Bruss is not dispositive of this case because the issues presented and the factual background are demonstrably dissimilar. Having made this determination, we now turn to the merits of Appellant's claim of error.

During the relevant time frame of this case, 18 U.S.C. § 3568 provided that a federal prisoner's sentence does not commence until "such person is received at the penitentiary, reformatory, or jail for service of such sentence." However, a prisoner's sentence must be credited with "any days spent in custody in connection with the offense or acts for which sentence was imposed." Id. Consequently, the questions pertinent to this case are whether Appellant was "in custody" of the federal government during the time in question, and if so, whether the time spent in custody was in connection with the offense which led to his federal sentence. We note in passing that the magistrate relied on the amended version of § 3568 which appears at 18 U.S.C. § 3585(b) and explicitly states that no time may be credited if the same time has been credited to another sentence. However, this amended version did not become effective until 1987, well after Appellant was sentenced to federal imprisonment. Consequently, our review is not concerned with the express Congressional mandate found in § 3585(b).

Unlike Bruss where there was a dispute over who had custody of petitioner because he was in a state prison, there is no dispute that Appellant was in a federal prison at the direction of federal authorities during the period of time at issue. We are convinced that this constitutes being "in custody" as contemplated by the statute. Next, we note that it is undisputed that the writ of habeas corpus ad prosequendum was issued to bring Appellant into federal custody for the purposes of prosecuting him on a federal charge of Conspiracy to Distribute Heroin. It was

this precise charge for which Appellant was convicted. Therefore, we also must find that Appellant's custody satisfies the "in connection with" requirement of § 3568 as he was held for an offense (conspiracy) for which he was ultimately convicted and sentenced. See also *United States v. Haney,* 711 F.2d 113 (8th Cir.1983); *Rooke v. Sizer,* 675 F.2d 507 (2d Cir.1982). *But see Crawford v. Jackson,* 589 F.2d 693 (D.C.Cir.1978). The fact that the state continued to grant Appellant jail time credit does not impact on our analysis under the facts presented herein because Appellant clearly satisfied the requirements of § 3568.

[2] Although we need not and do not reach Appellant's other issues on appeal, we recognize that he presented a viable claim of a due process violation. Although the record is not absolutely clear, there appears to be no doubt that the federal district court' that sentenced Appellant granted to him the disputed 562 days of jail time credit. We can find no authority justifying the subsequent deduction of that time by the prison administration regardless of the procedural safeguards employed by the prison. The reduction of such jail time credit is not within the discretionary powers of the prison, but more properly lies with the sentencing court.

Accordingly, the district court's decision is REVERSED, and the case is REMANDED with directions that Appellant be credited on his federal sentence for the period of time commencing on March 9, 1988 (the date Appellant was removed to federal custody) and ending on September 23, 1984 (the date Appellant's state sentence expired while still in federal custody). For purposes of clarity, we note that Appellant is not entitled to additional credit for the time spent in federal custody from September 24, 1984 until October 5, 1984 and from April 2, 1985 to June 3, 1985 because he has already been credited on his federal sentence for these periods of time.

---

Rosaly Jean SHEPPARD,
Plaintiff-Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Defendant-Appellee.

No. 92-2228.

United States Court of Appeals,
Tenth Circuit.

April 11, 1994.

President of insured corporation brought suit against insurer providing underinsured motorist coverage. The United States District Court for the District of New Mexico, James A. Parker, J., entered judgment for insurer and appeal was taken. The Court of Appeals, Wesley E. Brown, Senior District Judge, sitting by designation, held that: (1) North Carolina law applied, and (2) under that law president, who had not been named as an insured, did not have insured status under policy.

Affirmed.

1. Insurance ⟂=147(2)

Under conflict of law rules for state of New Mexico, applicable to federal courts sitting in diversity, an insurance contract is to be interpreted under law of place where contract was consummated.

2. Evidence ⟂=405(1)
Insurance ⟂=146.6

Under North Carolina law, when insurance policy is not ambiguous, court will construe policy strictly without resort to extrinsic evidence.

3. Evidence ⟂=405(1)
Insurance ⟂=467.51(3)

Underinsured motorist policy unambiguously applied only to corporate insured, and extrinsic evidence would not be permitted, under governing North Carolina law, to show that it was intention of parties that president of insured be named insured under policy.

4. Insurance ⟂=467.51(3)

Employee of named corporate insured under an underinsured motorist policy, would not be deemed named insured under governing North Carolina law.

5. Insurance ⟂=467.51(3)

President of corporate insured, who was struck by underinsured automobile while on personal business, was not entitled under North Carolina law to recover underinsured motorist, benefits under policy on which she was not a named insured; at most she would be a "class-two" beneficiary, entitled to benefits only if she were driving or occupying an insured corporate vehicle.

6. Insurance ⟂=399

Payment of medical benefits to president of corporation, who was not named entitled to receive them, did not estop insurer from denying benefits under underinsured motorist portion of policy, after discovering its error; there had been no detrimental reliance on part of recipient.

Paul S. Wainwright, Albuquerque, NM, for plaintiff-appellant.

Gordon J. McCulloch (Lisa M. Tourek with him on the brief), Bradley & McCulloch, Albuquerque, NM, for defendant-appellee.

Before LOGAN and MOORE, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

In this action, plaintiff sued to recover underinsured motorist benefits under a policy issued by the defendant Allstate Insurance Company. The district court entered an order granting defendant's motion for summary judgment on all of plaintiff's claims, which were then dismissed with prejudice. Plaintiff claims in this appeal that the district court erred in ordering summary judgment since disputed factual issues pre-

---

clude such an order, and that the district court erred in failing to apply the law of New Mexico in interpreting policy benefits.

A motion for summary judgment is to be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Following our review of the record, we find that judgment was properly entered in favor of defendant and the order and judgment of the district court will be affirmed.

The undisputed facts appearing of record in this case establish that on April 16, 1985, Allstate Insurance Company received an application for auto insurance from its agent, Carl McIntosh of Ashville, North Carolina. The application listed the applicant as Skyway Aviation, Inc., a North Carolina corporation. The plaintiff, Rosaly Sheppard, was the president of Skyway Aviation, and Carl McIntosh was the vice-president. Sheppard and McIntosh were the sole shareholders in Skyway Aviation. As noted, McIntosh was also a general agent for Allstate and sold both commercial and individual automobile insurance.

The application for insurance which listed McIntosh as the authorized driver, was signed by McIntosh as vice-president of Skyway, and Sheppard's name does not appear anywhere on the application.[1] This application listed the address for Skyway as 201 Clyde Savings Building, Ashville, North Carolina, the same address as that of McIntosh's Allstate office.

It appears that Allstate issued a "personal lines" policy to Skyway, rather than a commercial policy. The policy was sent to Skyway, and McIntosh delivered it to plaintiff. As issued, the uninsured/underinsured provisions of the policy define the insured as:

1. You or any family member.
2. Any other person occupying:
  a) your covered auto; or

---

* The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

1. In his deposition, McIntosh testified that he later called in plaintiff's name and driver's li-

cense number as an additional driver under the policy, but as noted, *infra,* plaintiff's name does not appear as an insured under the policy as issued.



...ar that *absent authorization from [Con]gress*, a district court could not exer[cise] pendent jurisdiction over claims in[vol]ving parties who were not already [pa]rties to a claim independently within [the] court's subject matter jurisdiction. *See Finley v. United States*, 490 U.S. ...5, 109 S.Ct. 2003, 104 L.Ed.2d 593 ...989).

...S.Ct. at 1004 (emphasis added; some [citat]ions omitted). The Court elaborated [§] 1367 provided just such authoriza[tion]—functioning as a "general grant of [juris]diction." *Id.* at 1005. As the Su[preme] Court explained in *Raygor*, Article [III] permits supplemental jurisdiction "if [the] federal and state law claims 'derive ... a common nucleus of operative fact' [and] comprise 'but one constitutional ...'" *Id.* at 1004 (quoting *Gibbs*, 383 ... at 725) (some internal quotation ...s omitted). Thus, any suggestion to [the contrary that the] Constitution imposes a bar [to] supplemental jurisdiction over addition[al par]ties independent of statutory authori[za]tion has been undermined by interven[ing] Supreme Court authority. *See United [States] v. Gray*, 967 F.2d 322, 327 (9th Cir. ...) (holding that a prior panel decision is [binding] in such a situation).

[Se]lective Employment provides no con[stitutional] rationale to restrict supplemental [juris]diction beyond the limitation imposed [by *Gi*]*bbs*. Indeed, the district court sug[gested] that it would hold otherwise but for [the be]lief that its hands were tied by *Aya[la]*. The district court's instincts were vin[dica]ted by the Supreme Court's later rul[ing] in *Raygor*. We acknowledge, of [cour]se, that federal courts are courts of [limi]ted jurisdiction. U.S. Const. Art. III, [§ 2]; *Finley*, 490 U.S. at 550 (quoting [*Ray*]*gor*, 427 U.S. at 15). The *Gibbs* stan[dard] defines the minimum constitutional [cons]traints, offering both Congress and [the] district courts flexibility to shape each [one] in a way that is efficient for the...

courts, fair to the parties, and respectful of state sovereignty.

Finally, we note that none of our sister circuits has imposed a per se constitutional restriction on supplemental jurisdiction over additional parties. *See Hinson v. Norwest Financial S.C., Inc.*, 239 F.3d 611, 615 (4th Cir.2001) (holding that district court did not abuse its discretion in joining plaintiffs who asserted only state law claims); *HB Gen'l Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1197–98 (3d Cir.1996) (holding that nondiverse party could be joined for counterclaims); *Ammermann v. Sween*, 54 F.3d 423, 424 (7th Cir.1995) (noting that only *Gibbs* now limits pendent party jurisdiction); *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1566–67 (11th Cir.1994) (holding that district court had pendent party jurisdiction because claims involved the "same facts, occurrences, witnesses, and evidence").

[14,15] Thus, to avoid dismissal for lack of federal subject matter jurisdiction, the employees must show that the state conspiracy claims against Selective Employment constitute part of the same constitutional case as the federal RICO claims against the growers.... Assuming that the claims meet the *Gibbs* standard, the district court has the power to exercise supplemental jurisdiction. The decision to exercise that jurisdiction remains discretionary with the district court. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (holding that district courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness, and comity). We therefore remand for the district court to determine, in the first instance, whether the application of the *Gibbs* standard permits the exercise of supplemental jurisdiction, and to exercise discretion over whether such

---

## WEEKES v. FLEMING    1175
Cite as 301 F.3d 1175 (10th Cir. 2002)

jurisdiction would be appropriate in the context of this litigation.

REVERSED and REMANDED.



Johnny Horton WEEKES, Petitioner-Appellant,

v.

L.E. FLEMING, Warden, Respondent-Appellee.

No. 01-6054.

United States Court of Appeals, Tenth Circuit.

Aug. 14, 2002.

Inmate petitioned for habeas corpus. The United States District Court for the Western District of Oklahoma, Robin J. Cauthron, Chief District Judge, dismissed, and the inmate appealed. The Court of Appeals, Wesley E. Brown, Senior District Judge, sitting by designation, held that; (1) defendant's federal sentence began, for purposes of the statute governing interruptions of a federal sentence, when the United States Attorney General designated a federal prison where defendant should serve and then transported defendant to that facility, but (2) interruption of the defendant's federal sentence when he was returned to Idaho entitled him to credit on the federal sentence.

Reversed and remanded.

**1. Sentencing and Punishment ⚖1175**

Defendant received credit against his state sentence for all the time spent in official detention prior to the date his federal sentence commenced, and thus, he was not entitled to pre-sentence credit. 18 U.S.C.A. § 3585(b).

**2. Attorney General ⚖6**

Subject to statutory restrictions, the United States Attorney General has the exclusive authority to determine when a federal sentence shall begin and where the federal sentence shall be served.

**3. Sentencing and Punishment ⚖1155**

Defendant's federal sentence began, for purposes of the statute governing interruptions of a federal sentence, when the United States Attorney General designated a federal prison where defendant should serve and then transported defendant to that facility. 18 U.S.C.A. § 3585(a).

**4. Statutes ⚖219(6.1)**

Where the Bureau of Prisons' (BOP) interpretation is a permissible construction of a statute, it is entitled to some deference.

**5. Sentencing and Punishment ⚖1175**

United States and Idaho agreed to a permanent change of custody of a prisoner from Idaho to the United States; such that the United States was under no duty to return the defendant to state custody after federal sentencing, and thus, interruption of the defendant's federal sentence when he was returned to Idaho entitled him to credit on the federal sentence; Idaho allowed the United States to take exclusive physical custody of a defendant without presenting either a written request for temporary custody or a writ of habeas corpus ad prosequendum, and a request to produce the documents on which the United States based its authority to take custody of the defendant resulted in production only of a warrant for arrest and an indictment. 18 U.S.C.A. § 3585(a).

**6. Sentencing and Punishment ⚖1117**

Generally, a sentence of five years means a continuous period of time, interrupted by some fault of the prisoner, and

**1176**    301 FEDERAL REPORTER, 3d SERIES

he cannot be required to serve it in installments. 18 U.S.C.A. § 3585(a).

**7. Criminal Law ⊙100(3)**

The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant.

**8. Criminal Law ⊙100(3)**

Rule of comity providing that the sovereign that first acquires custody of a defendant in a criminal case, is entitled to custody until it has exhausted its remedy against the defendant does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through with him or until the first sovereign agrees to temporarily or permanently relinquish custody.

**9. Criminal Law ⊙100(3)**

Defendant lacks standing to complain of or choose the manner in which each of two sovereigns proceeds against him so long as his constitutional rights in each trial are not violated.

Johnny Horton Weekes, pro se.

Michael G. Katz, Federal Public Defender, and James P. Moran, Assistant Federal Public Defender, Denver, CO, on supplemental brief for Petitioner-Appellant.

Daniel G. Webber, Jr., United States Attorney, and K. Lynn Anderson, Assistant United States Attorney, Oklahoma City, OK, for Respondent-Appellee.

Before HENRY, McKAY, Circuit Judges, and BROWN,* Senior District Judge.

\* The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

BROWN, Senior District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Johnny Horton Weekes, a federal inmate appearing pro se, appeals from an order dismissing his petition for habeas corpus relief brought pursuant to 28 U.S.C. § 2241. Mr. Weekes asserts that he is entitled to credit for pre-federal-sentence time served under 18 U.S.C. § 3585(b). He also asserts that he is entitled to credit for time served in post-federal-sentence state incarceration under 18 U.S.C. § 3585(a) and *White v. Pearlman,* 42 F.2d 788 (10th Cir. 1930), because he has been forced to serve his federal sentence "on an installment basis" in violation of the statute and his constitutional rights.[1] Appellant's Br. at 3, 6. Our jurisdiction arises under 28 U.S.C. § 1291. We reject the first argument but, because we find merit in the second argument, we reverse.[1]

## I. Standard of review

The complex procedural history of this case is partially documented in the magistrate judge's November 6, 2000 report and recommendation and the district court's December 21, 2000 order denying the petition for writ of habeas corpus. Mr. Weekes does not claim that the procedural history is factually incorrect. Rather, he argues that the court misinterpreted the record and the applicable law. We thus review de novo the district court's dismiss-

1. Given our resolution of this case, we need not reach Mr. Weekes' further contentions in regard to the application of U.S.S.G.'s 5G1.3.

---

al of Mr. Weekes' petition. *Patterson v. Knowles,* 162 F.3d 574, 575 (10th Cir. 1998).

## II. Procedural history

Mr. Weekes was arrested on November 13, 1993, by Idaho state authorities and charged with possession of a controlled substance in Bannock County, Idaho. He pleaded guilty to the charge, and on April 18, 1994, was sentenced to the custody of the Idaho Department of Corrections (DOC) for a fixed term of two years and a subsequent indeterminate term of three years. This sentence was suspended and Mr. Weekes was placed on three years' probation. Just two days later, on April 20, 1994, Mr. Weekes was again arrested, taken into state custody in Bonneville County, Idaho, and charged with additional, unrelated state drug offenses. On May 2, 1994, he was transported from Bonneville County to Bannock County to attend a hearing on the April 18, 1994 sentence. The judge set a May 27, 1994, hearing on the probation violation and remanded Mr. Weekes to state custody in the Bonneville County Jail. Appellee's App. at 106–07.

A federal indictment issued on May 12, 1994, for federal drug offenses associated with Mr. Weekes' April 20 arrest. He was subsequently "arrested" on a warrant by the United States Marshals Service on May 16, while still in state custody, and taken into federal custody for prosecution on those charges. On May 24, 1994, the April 20 state charges were dismissed because of the pending federal charges. Mr. Weekes was transferred back into state custody on May 25 pursuant to a state writ of habeas corpus ad prosequendum so that he could appear for his May 27 state pro-

2. Mr. Weekes was resentenced on the federal offense on March 17, 1999, to a 151-month term after the district court vacated a count for possession of a firearm pursuant to *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Appellee's App. at

bation violation hearing. At that time, the state court resentenced him to a two-to-five year term of imprisonment on the probation violation and 1993 conviction. The order stated "this sentence shall run concurrent with any sentence imposed by the Federal Courts regarding the same charge." *Id.* at 19. A copy of the order was sent to the federal judge assigned to hear Mr. Weekes' federal criminal prosecution. *See* Supp.App. at 283, 221.

After the hearing Mr. Weekes was returned to federal custody, where, upon a plea of guilty, he was sentenced on February 7, 1995, to a 188-month term of federal imprisonment.[2] On February 21, 1995, the United States designated Mr. Weekes to be transferred to the federal penitentiary in Lompoc, California, to begin serving his federal sentence. The United States Marshal issued an "Order to Deliver" on March 10, 1995, requiring the jail to deliver its prisoner, Mr. Weekes, to a United States Marshal. *Id.* at 249. Mr. Weekes arrived at Lompoc on March 16, 1995.

On March 24, 1995, Bureau of Prisons (BOP) staff at Lompoc discovered that Mr. Weekes had not yet served the state sentence imposed on May 27, 1994. A staff member notified the U.S. Marshals Service in the district of Idaho of this fact and stated that, since the 1995 federal judgment was silent on whether the federal sentence should be served consecutively or concurrently to the state sentence, it should be served consecutively. *Id.* at 258. On April 3, the U.S. Marshals Service in Idaho requested the prisoner transportation division to arrange for Mr. Weekes' transport back to the Idaho State Correc-

60. The court later clarified that it intended this sentence to be served consecutively to his state conviction because the state conviction for the 1993 drug charge was for a different underlying crime than the federal conviction. *Id.* at 131, 116 S.Ct. 501.

tional Facility "to serve state sentence as he was given 2-5 yrs. for prob. violation ... before he was sentenced federally but while he was in fed. cust." Id. at 260.

On April 12, 1995, the Idaho DOC lodged a notice of detainer with the Lompoc penitentiary. The notice stated that Mr. Weekes "has a concurrent sentence running in Idaho" and requested sixty days notice prior to his release from federal custody. Id. at 262. On April 18, Lompoc acknowledged receipt and filing of the detainer and informed the Idaho DOC that Mr. Weekes' federal "[r]elease is tentatively scheduled for 10-23-2008." Id. at 256. A copy of this "detainer action letter" was apparently given to Mr. Weekes. See id.

On the same date, however, the U.S. Marshals Service prepared a transit document authorizing Mr. Weekes' transfer back to Idaho, and he was transferred and released to state custody in Idaho on April 20, 1995. Id. at 264, 280. Appellee states that the release to state custody was made on the basis of the Idaho detainer; See id. at 253.

It is uncontroverted that Mr. Weekes was given credit on his state sentence from April 20, 1994 to April 19, 1995, including the time he spent in federal custody. After serving in Idaho state prison for a full five-year state term, on April 18, 1999, Mr. Weekes was again transferred to the custody of the federal BOP. Citing White and § 3585, Mr. Weekes asserted that his federal sentence began on February 21, 1995, and that he should be released or at least be given credit on his federal sentence for the five years that he was incarcerated in state prison.

The BOP refused to grant such credit, basing its denial on Prisons Program Statement No. 5880.28 (July 29, 1994) of its Sentence Computation Manual (hereinafter P.P.S. 5880.28), and contending that Mr. Weekes was in federal custody on the basis of a federal writ of habeas corpus ad

prosecutendum. Appellee's App. at 120-21, 128. The BOP also based its denial of federal credit on its determination that primary jurisdiction remained in Idaho and that Mr. Weekes' transfer to Lompoc was an error because he should have been returned to Idaho after federal sentencing as a required condition of the writ. Id. at 121. The BOP thus contended that Mr. Weekes' federal sentence did not begin until April 18, 1999. Mr. Weekes filed this habeas petition.

## III. Discussion

### A. Pre-sentence credit under 18 U.S.C. § 3585(b).

[1] A federal prisoner is statutorily entitled to credit for time spent in official detention prior to the date his federal sentence commences if the detention resulted from the same offense of conviction or from another charge for which the defendant was arrested after commission of the offense of conviction and if that time has not been credited against another sentence. 18 U.S.C. § 3585(b). Mr. Weekes received credit against his state sentence for all the time served prior to the date this federal sentence commenced, whether the commencement date of his federal sentence is considered to be in 1995 or 1999. The magistrate judge's report and recommendation and the district court order thoroughly and accurately analyzed Mr. Weekes' claim under § 3585(b), and for substantially the same reasons as stated in the report and order, we agree that Mr. Weekes is not entitled to pre-sentence credit under § 3585(b).

### B. Post-sentence credit under 18 U.S.C. § 3585(a) and White.

Neither the magistrate judge's report nor the district court order, however, addresses Mr. Weekes' additional claim that he is entitled to post-sentencing credit

credit for time served in a state facility under the principle that a "sentence of five years means a continuous sentence, unless interrupted by ... some fault of the prisoner, and he cannot be required to serve it in installments." White, 42 F.2d at 789. At the heart of Mr. Weekes' argument is his claim that, pursuant to § 3585(a), his federal sentence actually commenced when he was designated to be transferred to serve his time at the federal penitentiary in Lompoc on February 21, 1995, and continued to run despite the fact that the United States sent him to Idaho to serve his state sentence. Mr. Weekes vigorously contended that no federal writ of habeas corpus ad prosecutendum ever existed.

Appellee maintained that (1) Mr. Weekes' release to federal custody on May 16 was "erroneous []," Appellee's Br. at 4, 18; (2) sending Mr. Weekes to begin serving his federal sentence was simply a further "mistake," id. at 5, with no legal significance; and (3) it was under a legal obligation to return Mr. Weekes to Idaho for service of his state sentence first because Mr. Weekes had been "borrowed" from the primary custodian via a writ of habeas corpus ad prosecutendum," id. at 12. Our first task is to determine when Mr. Weekes' federal sentence "actually commenced."

#### 1. Commencement of federal sentence.

[2-4] Subject to statutory restrictions, the United States Attorney General has the exclusive authority to determine when a federal sentence shall begin and where the federal sentence shall be served. See Ponzi v. Fessenden, 258 U.S. 254, 262, 42 S.Ct. 309, 66 L.Ed. 607 (1922). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the

date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." There is a presumption that a federal sentence imposed after a prior state sentence will be served consecutively to the state sentence. See 18 U.S.C. § 3584(a). Here, however, the record conclusively shows that the United States Attorney General chose to begin Mr. Weekes' federal sentence on February 21, 1995, by designating a federal prison where he should serve and then transporting him to that facility. See § 3585(a). This is a permissible exercise of the Attorney General's discretion, as demonstrated by the BOP's prison program statement.[3] Under the relevant section, which interprets § 3585(a),

[i]f the prisoner ... is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosecutendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

P.P.S. 5880.28(b).

Although appellee contended in his brief that Mr. Weekes was in federal custody pursuant to a writ of habeas corpus ad prosecutendum, he did not submit the writ with his appendix. When ordered to produce the writ, appellee conceded that none exists. We conclude that Mr. Weekes' federal sentence began on February 21, 1995. Cf. Hayward v. Looney, 246 F.2d 56, 58 (10th Cir.1967) (holding that a federal sentence began to run after service of state sentence when prisoner was surrendered

[3]. A Program Statement is an internal agency guideline, which is akin to an interpretive rule. See Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Where the BOP's interpretation is a "permissible construction of the statute," it is entitled to "some deference." Id.

back to state prison facility without having been received at a federal penal institution for service of his federal sentence).

## 2. Interruption of federal sentence.

[5, 6] The next question we must answer is whether the United States may interrupt the service of a federal sentence without giving the federal prisoner credit on that federal sentence. We note the general rule that "a sentence of five years means a continuous sentence, unless interrupted by ... some fault of the prisoner, and he cannot be required to serve it in installments." *White*, 42 F.2d at 788; *cf. Newell v. Page*, 382 F.2d 538, 539 (10th Cir.1966) (recognizing "right to continuous service" of sentence but holding that prisoner's escape caused interruption, so no right to credit); *see also Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir.1994) (noting and upholding common-law rule applicable to federal sentencing "that unless interrupted by fault of the prisoner ... a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it"). Appellee contends that, because the United States was under a legal duty to return Mr. Weekes to Idaho for service of his state sentence, the interruption of his federal sentence should be excused. Did the United States have such a duty? Again, the record supports our conclusion that it did not.

[7–9] The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant; *Ponzi*, 258 U.S. at 260, 42 S.Ct. 309; *Rawls*, 166 F.2d at 532, 533 (10th

4. Of course, a defendant does not have standing to "complain of or choose the manner in which each sovereign proceeds against him so long as his constitutional rights in each trial are not violated." *Rawls*, 166 F.2d at 534.

5. In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Court

Cir.1948). This rule of comity does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through with him or until the first sovereign agrees to temporarily or permanently relinquish custody. *See Rawls*, 166 F.2d at 533; *see also Hayward*, 246 F.2d at 57 (noting that the first sovereign with custody determines whether jurisdiction and custody shall be retained or surrendered). "The law of comity is such that ... two sovereigns may decide between themselves which shall have custody of a convicted prior jurisdiction need not waive its right to custody." *Hernandez v. United States Attorney Gen.*, 689 F.2d 915, 919 (10th Cir.1982).[4]

As the first arresting sovereign, Idaho initially had primary custody of Mr. Weekes and the right to maintain or relinquish control of him. *See Ponzi*, 258 U.S. at 260, 42 S.Ct. 309; *Williams v. Taylor*, 327 F.2d 322, 323 (10th Cir.1964) (per curiam). If the State of Idaho maintained primary custody and the United States took only temporary custody under either a detainer and written request for temporary custody or a writ of habeas corpus ad prosequendum,[5] Idaho was entitled to Mr. Weekes' return after his federal sentencing under the law of comity and the requirements of the writ. *See Crawford v. Jackson*, 589 F.2d 693, 695 (D.C.Cir.1978); *cf. Lunsford v. Hudspeth*, 126 F.2d 653, 656 (10th Cir.1942) (stating that custody and control of a prisoner is limited to the

described the difference between detainers and writs of habeas corpus ad prosequendum and noted that, after filing a notice of detainer, the prosecutor secures temporary custody by presenting the state with either a written request for temporary custody or a writ of habeas corpus ad prosequendum. *Id.* at 362, 98 S.Ct. 1834.

purposes for which he is obtained from state authorities." Conversely, if Idaho chose to relinquish or transfer its primary custody to the United States, leaving the state sentence to be served concurrently with the subsequent federal sentence, then the United States was relieved of its duty to return Mr. Weekes to Idaho to complete his state sentence before commencing his federal sentence. *See Hernandez*, 689 F.2d at 918 (noting that sovereign with prior jurisdiction and custody may waive rights and allow another sovereign to proceed with execution of its sentence). Did that happen in this case? Undisputed facts aid us in our inquiry.

The record demonstrates that Idaho indeed relinquished primary custody of Mr. Weekes to the United States. Idaho allowed the United States to take exclusive physical custody of Mr. Weekes without presenting either a written request for temporary custody or a writ of habeas corpus ad prosequendum. When we asked appellee to produce the documents on which the United States based its authority to take custody of Mr. Weekes on May 16, 1994, appellee produced only a warrant for arrest and the indictment. It is presumed, therefore, that both the United States and Idaho agreed to a permanent change of custody. *See* P.P.S. 5580.28(b) (defining exclusive custody as custody obtained without a writ of habeas corpus ad prosequendum); *Stripling v. United States*, 172 F.2d 636, 636 (10th Cir.1949).

This presumption is born out by the further acts of the two sovereigns. Idaho subsequently used an ad prosequendum writ to regain custody of Mr. Weekes for the probation violation hearing, affirma-

6. The three unpublished Tenth Circuit decisions cited by appellee as support for its contention that Mr. Weekes is not entitled to federal credit for the time spent in state prison are distinguishable. In two of the cases, we specifically noted that the petitioner was delivered from state custody to federal custo-

tively indicating its consent to change of custody by its request for Mr. Weekes' "loan." *Cf. Brown v. Perrill*, 28 F.3d 1073, 1074–75 (10th Cir.1994) (discussing effect of ad prosequendum writ on custody status of prisoner). The state district court's subsequent sentencing order expressly provided that Mr. Weekes' state sentence should be served concurrently with a future federal sentence, and the court sent a copy to the judge presiding over Mr. Weekes' federal prosecutions. Idaho then lodged a detainer expressly noting that this state sentence was concurrent and requesting Mr. Weekes' return to the state prison system upon completion of his federal sentence, further affirmatively showing its relinquishment of Mr. Weekes to federal primary custody. The United States consistently designated Mr. Weekes as a federal prisoner after it took custody. It acknowledged the detainer and agreed to notify the State when Mr. Weekes' federal sentence was almost completed. The United States was under no duty to return Mr. Weekes to state custody after federal sentencing.[6]

## C. Conclusion.

Under the circumstances and for the reasons stated above, Mr. Weekes must be given federal credit for time served since February 21, 1995, the date his federal sentence actually commenced. *See Luther v. Vanyur*, 14 F.Supp.2d 773 (E.D.N.C. 1997) (holding that federal sentence commenced on date prisoner received into federal custody to begin federal sentence and ran continuously, and granting credit for period of time prisoner was temporarily

dy pursuant to a writ of habeas corpus ad prosequendum. The third case is silent as to that issue and was decided under § 3585(b) and not § 3585(a). The cases are therefore not on point and are not persuasive authority for appellee's position.

eleased to finish serving unrelated state sentence); *cf. Williams,* 827 F.2d at 823 ("[w]hen a state surrenders one of its prisoners to the federal government for the purpose of trial on charges pending there, judgment and sentence upon conviction in the federal court does not begin to run, the prisoner is delivered back to state authorities, until the prisoner is thereafter returned to federal custody and *received at federal penal institution for service of his sentence.*") (emphasis added).

We emphasize that our holding has no effect on the consecutive nature of Mr. Weekes' sentencing under the presumption set forth in § 3584(a) that sentences imposed at different times will be served consecutively unless the court orders otherwise. Section 3584(a) does not mandate how consecutive sentences are served; the United States Attorney General and the state work that out between themselves by issuing writs of habeas corpus and detainers. The United States chose to begin Mr. Weekes' federal sentence first, and Idaho expressly conceded to that arrangement, filing its detainer so that he could complete his state sentence afterwards. Except for the Bureau of Prison's "mistake" in prematurely sending him to Idaho, Mr. Weekes would have served a consecutive sentence as contemplated by § 3584(a). The fact that Mr. Weekes has now completed his state obligation because of that mistake is not the controlling factor in determining the completion date of his federal obligation.

We REVERSE and remand for further proceedings consistent with this opinion.

---

Merrilee PETERSEN, Plaintiff-Appellant,

and

James Warren "Flaming Eagle" Mooney, Plaintiff.

v.

UTAH DEPARTMENT OF CORRECTIONS, Terry Bartlett, Fred VanDerVeur, Robert Tansy, O. Lane McCotter, and H.L. Peter Haun, individually and in their official capacities as allowed by law, Defendants-Appellees.

No. 01-4090.

United States Court of Appeals, Tenth Circuit.

Aug. 22, 2002.

Former employee sued Utah Department of Corrections (UDOC) under Title VII, and corrections officials under § 1983, alleging that UDOC and officials retaliated against her for opposing discriminatory treatment of Native American co-worker. The United States District Court for the District of Utah, David Sam, J., entered summary judgment in favor of Department and officials. Former employee appealed. The Court of Appeals, Hartz, Circuit Judge, held that: (1) UDOC's motive for any adverse actions against employee was not her opposition to alleged discriminatory treatment, and she thus failed to establish retaliation claim under Title VII; (2) UDOC's alleged action of taking employee "out of the information loop" was not adverse action; and (3) officials did not violate employee's free speech, equal protection, or due process rights.

Affirmed.

**1. Master and Servant ⊙30(6.10)**

The absence of a reference to unlawful discrimination by an employee can preclude a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**2. Master and Servant ⊙30(6.10)**

Opposition to an employer's conduct is protected by Title VII's retaliation provision only if it is opposition to a practice made an unlawful employment practice by Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**3. Civil Rights ⊙141**

Title VII does not prohibit all distasteful practices by employers. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**4. Master and Servant ⊙30(6.10)**

Employee's opposition to employer's action could be protected by Title VII's retaliation provision even if employee were wrong about whether employer had in fact engaged in violation of Title VII; it would be enough if employee had good faith belief that Title VII had been violated. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**5. Master and Servant ⊙30(6.10)**

An employer's action against an employee must be because of that employee's protected opposition, as required for the action to violate Title VII's retaliation provision, unless the employer knows the employee has engaged in protected opposition. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**6. Master and Servant ⊙30(6.10)**

The purpose of Title VII's retaliation provision is to let employees feel free to express condemnation of discrimination that violates Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**7. Prisons ⊙7**

State corrections department's motive for its alleged adverse actions against employee was not her opposition to deputy warden's alleged discriminatory treatment of Native American co-worker, and employee thus failed to establish retaliation claim under Title VII, where at time of alleged adverse actions employee had not communicated to anyone her belief that deputy warden had discriminated against co-worker. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**8. Master and Servant ⊙30(6.10)**

To violate Title VII, an employer's retaliation must be a materially adverse employment action. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**9. Prisons ⊙7**

State corrections department's alleged action of taking employee "out of the information loop" was not adverse action upon which Title VII retaliation claim could be based, where employee's only evidence that she was denied information was her testimony that she received only one day's notice of banquet which she actually attended. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**10. Prisons ⊙7**

State corrections department's unsuccessful attempt to transfer employee was not adverse action upon which Title VII retaliation claim could be based. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**11. Prisons ⊙7**

State corrections department's alleged action of treating employee's complaints about deputy warden as claim of sexual harassment, resulting in ridicule of her by

WILKINS MALDONADO-GARCIA, 19305-069
ELKTON FCI     UNT: UNIT C     QTR: C03-038L
8730 SCROGGS ROAD P.O.BOX 89
ELKTON,  OH 44415

28 FEDERAL REPORTER, 3d SERIES

rules, the right to effective counsel on appeal does not arise from state law, and state law cannot operate to limit or restrict it. See *Evitts,* 469 U.S. at 400–01, 105 S.Ct. at 888–89. The Oklahoma Court of Criminal Appeals in *Abels v. State,* after reciting the state rule, concluded:

[Recognizing the jurisdiction of the federal courts in habeas corpus pursuant to 28 U.S.C. § 2254, it is apparent that the the Court of Appeals, 10th Circuit, has conducted a review and determined *under federal law* that Appellant was denied a direct appeal of his convictions through no fault of his own and that finding is binding upon state courts.

804 P.2d at 455–56 (emphasis added). Thus, this ruling acknowledged the authority of our holding in *Abels v. Kaiser* that the defendant's federal constitutional right to effective counsel on appeal had been violated.

[7] When counsel has agreed to represent a defendant on appeal—as plainly appears to be the situation before us—we think the Supreme Court and other appellate cases of the past thirty years require that counsel continue to serve until released by some formal court document or statement signed by the defendant, which makes abundantly clear that this lawyer is no longer obligated to serve and that the defendant must acquire other counsel by retainer or court appointment. *See Abels v. Kaiser,* 913 F.2d at 822–23 (defendant's failure to pay counsel does not excuse counsel from a duty to protect defendant's federal constitutional right to appeal). To the extent that *Pueblo v. Stala,* 790 P.2d at 142, is to the contrary it must give way absent a written release by the court or the defendant.

### III

[8] Our holding that retained defense counsel continued to be bound to petitioner until he was released does not resolve the appeal before us. A defendant cannot ask his counsel to appeal, affirmatively prevent the appeal from being timely perfected, and then take advantage of his own malfeasance to acquire an appeal out of time. Such a rule would make a mockery of statutory time limitations and the concept of finality.

[9] Failure to pay retained counsel's fee does not obstruct perfection of the appeal. If the defendant has indigent—his resources having been exhausted by the trial or his family having terminated their help—trial counsel may secure his own appointment to handle the appeal for the indigent at state expense. Counsel for a nonindigent client may perform attorney services on appeal and may later sue for reimbursement, of course. If the attorney demands payment in advance and the defendant does not pay, the lawyer can ask the court or the client to relieve him within such time that another lawyer can file the record and brief the direct appeal.

[10, 11] But clearly if the defendant performs some act—such as destroying a record or other important papers—that prevents his attorney from perfecting an appeal, the defendant must be held to have waived his right to appeal regardless of his instructions to his attorney. Failure to provide the record to counsel can fall into this category. It is not unusual, however, for a retained attorney to agree to advance the costs of obtaining a transcript of trial proceedings. But we will not hold that the attorney must do so. The understandings between the parties and counsel's knowledge of petitioner's alleged inability to pay for a transcript are essential to a resolution of the issue before us—whether counsel provided constitutionally adequate services. The record does not contain sufficient facts to resolve that issue.

The record contains no transcript of state court proceedings, and no affidavits or other evidence of the understanding between petitioner and his attorney with respect to the trial transcript. There is no finding that petitioner was not indigent; only findings that at sentencing the court informed petitioner of an indigent's right to appointed counsel and a free transcript, and that during the time for perfecting a direct appeal petitioner never filed an application for a free transcript or court-appointed counsel. 1 R. tab 8, Ex. F.

In post-conviction proceedings the state court judge found that petitioner and his counsel certified to the sentencing judge that petitioner wanted no appointed counsel or

BROWN v. PERRILL

Cite as 28 F.3d 1073 (10th Cir. 1994)

state-provided transcript. *Id.* Petitioner himself, in his state court mandamus application of March 26, 1990, admitted that he did not request an attorney or record at state expense and that he did not offer proof of his inability to pay for an appeal. *Id.,* tab 8, Ex. A at 4. Petitioner denies, however, that the trial court or his attorney advised him of his right to counsel and a transcript at state expense if he was indigent. *Id.* Petitioner also alleges in his petition and briefs that he was unable to obtain funds to pay for a trial transcript because of his confinement in prison. In his reply brief he says that his family hired his attorney and after he was sentenced "I guess my family decided to give up on my attorney," Appellant's Reply Brief at 1, and that his "counsel knew at the time petitioner could not "pay him myself." *Id.* at 2.

The state district court found that counsel did not perfect a direct appeal because "Petitioner never made it possible for his counsel to obtain a transcript of the trial." *Id.,* tab 8, Ex. G. There is no basis in the record for that holding except the court's finding that petitioner did not want the transcript furnished at state expense. There is nothing in the record concerning whether counsel agreed to advance the costs of procuring the trial transcript. (Ordering a transcript would seem to be something counsel, rather than the client, would do.) The record itself contains nothing on when counsel became aware that petitioner would not, or could not, pay for the trial transcript. These matters must be determined to resolve the constitutional issue of the adequacy of counsel's representation.

The state courts did not reach these issues, apparently because of their reading of *Pueblo v. Stala* that counsel's duty ended with the filing of the notice of appeal and that no formal discharge of counsel was necessary until counsel filed something in the appellate court. The magistrate judge and the district court below did not reach these issues because they apparently viewed the Oklahoma court's comments in *Abels v. State* as adequately distinguishing, or rendering invalid, our *Abels v. Kaiser* ruling that retained counsel's duty to appeal continued, even though

he was not paid, until released by the client or a court.

[12] The district court, accepting the magistrate judge's recommendation, ruled that when petitioner failed to appeal his conviction he waived his right to habeas review. Applying the cause and prejudice standard, the court then found that petitioner had not demonstrated cause for the default. But if counsel's failure to perfect petitioner's appeal constituted a violation of his right to effective counsel on appeal, the cause and prejudice standard is satisfied. See *Hardiman v. Reynolds,* 971 F.2d 500, 505 (10th Cir.1992) (constitutionally ineffective counsel equals cause); *Hannon v. Maschner,* 845 F.2d 1553, 1558 (10th Cir.1988) (prejudice presumed when counsel fails to perfect appeal). That remains to be determined.

The judgment of the district court is REVERSED, and the cause is REMANDED for further proceedings consistent herewith. We deny petitioner's motion for appointment of appellate counsel.

Randy BROWN, Petitioner–Appellant,

v.

W.A. PERRILL, Warden, and U.S. Bureau of Prisons, Respondents–Appellees.

No. 93–1381.

United States Court of Appeals, Tenth Circuit.

July 15, 1994.

Prisoner convicted of conspiracy to distribute heroin petitioned for writ of habeas corpus. The United States District Court for the District of Colorado, Zita L. Weinshienk, J., denied the petition and appeal was taken. The Court of Appeals, 21 F.3d 1008, reversed and remanded. On petition for re-

## 1074    28 FEDERAL REPORTER, 3d SERIES

hearing, the Court of Appeals held that: (1) petitioner who was detained by federal authorities pursuant to writ of habeas corpus ad prosequendum for 19 months was in federal "custody" and was not merely "on loan" from state authorities, and (2) statute providing for credit does not permit Attorney General unilaterally to eliminate credit by administrative action and increase term once it has been provided expressly by sentencing court.

Petition for rehearing granted; order affirmed.

**1. Criminal Law ⊜1216.1(2)**

Petitioner who was released from state prison on writ of habeas corpus ad prosequendum and passed to federal custody to stand trial was in federal custody for purposes of statute providing for credit against sentence for any days spent in custody in connection with offense or acts for which sentence was imposed; petitioner was in federal custody for over 19 months before he was released by federal court on bond, and he was not tried for his federal crimes for an additional seven months. 18 U.S.C.(1982 Ed.) § 3568.

**2. Criminal Law ⊜1216.1(2)**

So long as federal government hold prisoner "on loan" pursuant to writ of habeas corpus ad prosequendum, prisoner does not have discretion to post bond in order to be sent back to state prison and thereby obviate writ, and prisoner must be given credit for time in federal custody. 18 U.S.C.(1982 Ed.) § 3568.

**3. Criminal Law ⊜1216.1(2)**

Statute authorizing Attorney General to "calculate" and "grant" appropriate credit against sentence for any days spent in custody in connection with offense or acts for which sentence was imposed does not permit Attorney General unilaterally to eliminate credit by administrative action, and increase term once it has been provided expressly by sentencing court. 18 U.S.C.(1982 Ed.) § 3568.

Randy Brown, pro se.

James R. Allison, Interim U.S. Atty, and Elizabeth J. Ruffing, Sp. Asst. U.S. Atty, Denver, CO, for respondents-appellees.

Before LOGAN, SETH, and BARRETT, Circuit Judges.

### OPINION ON REHEARING

On consideration of the petition for rehearing filed by Appellees in the above appeal, this court concludes as follows:

Appellees claim we erred by determining that Appellant Randy Brown was in federal custody for purposes of 18 U.S.C. § 3568 and by stating that the Attorney General was not permitted to administratively increase Appellant's sentence. While we will not disturb the holding of our prior decision filed in this matter, that decision is supplemented and clarified by the following analysis.

Petitioner was released from a California state prison on a writ of habeas corpus ad prosequendum and passed to federal custody to stand trial.

[1] As to the custody versus loan issue, Appellees assert that Appellant was merely "on loan" from the state to federal authorities and that the state never relinquished custody of Appellant. See Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); United States v. Welch, 928 F.2d 915, 915-16 n. 2 (10th Cir.1991); Hernandez v. United States Attorney General, 689 F.2d 915, 918-19 (10th Cir.1982).

In Hernandez, a state prisoner was transferred pursuant to a writ of habeas corpus ad prosequendum to federal authorities for sentencing on his federal conviction for bank robbery. We there noted that such a transfer was a matter of comity between the state and the federal government designed to accord Hernandez "expeditious administration of justice." Hernandez, 689 F.2d at 918. Furthermore, we held that the state had not relinquished exclusive custody of the petitioner and that he was merely "on loan" to the federal authorities for the limited purpose of sentencing him. Hernandez, 689 F.2d at 918.

## BROWN v. PERRILL    1075
Cite as 28 F.3d 1073 (10th Cir. 1994)

Although the opinion in Hernandez is silent on this point, it appears that Hernandez was "on loan" under the writ for only the time necessary to sentence him. This short duration is typical of all the cases cited by Appellees and numerous other cases reviewed by this court. However, in the case presented herein Appellant was in federal prison pursuant to a writ for over a year and a half before he was released by the federal court on bond, and he was not even tried for his federal crimes for an additional seven months. Thus he was in federal custody for over two years. Absent evidence to the contrary, we are unwilling to infer that a federal detention and control pursuant to a writ of habeas corpus ad prosequendum may last for such an extended period without the detention transmitting into custody.

We recognize that our holding is fact specific, and we are unwilling to announce a per se rule as to how long a state prisoner may be "on loan" to federal authorities without the authorities taking custody of the prisoner. Suffice it to say that absent a clear directive from the state authorities the nineteen-month detention by Appellees constitutes federal "custody" for purposes of § 3568.

[2] Appellees also argue that Appellant could have made bond on his federal charge and been released several days after his state sentence terminated. In fact, Appellant did make bond several days after his state sentence terminated. From this Appellees deduce that Appellant was not truly "in custody" because he held the keys to his freedom from federal confinement. We find such an argument to be unpersuasive. As we have stated, the writ of habeas corpus ad prosequendum is a matter of comity. Moreover, a prisoner may not object to its use. Hernandez, 689 F.2d at 919. To permit prisoners to defeat the writ by posting bond would eviscerate the purpose and vitality of these writs, and undermine the state's power to transfer its prisoners under the writs. Thus, so long as the federal government properly holds a prisoner "on loan" pursuant to a writ the prisoner does not have the discretion to post bond in order to be sent back to the state prison and thereby obviate the writ. Stated

another way, if Appellees' argument were correct, that Appellant could post bond during his detention, then he must have been in custody of the federal government because we have stated that he would not have been able to post bond to defeat the state's legitimate exercise of its power to "lend" him to Appellees.

Similarly, the fact that Appellant made bond after his state sentence run does not support Appellees' position. Under Appellees' theory, a writ is essentially a contract between the state and federal authorities whereby the state permits the federal officials to detain its prisoner for a limited purpose. Even if Appellant were "on loan" for such a long period, the state's power to loan Appellant to Appellees ended when Appellant's state sentence terminated. Consequently, Appellees' detention of Appellant after his state sentence had run could not have been pursuant to the writ but rather necessarily was for the federal government's exclusive interest in maintaining pretrial custody of Appellant.

We therefore reaffirm our holding that Appellant was in the federal custody of Appellees for approximately nineteen months, and his failure to post bond at any earlier date in no way eliminates the custodial nature of his federal detention.

[3] Lastly, Appellees attack our conclusion that the Bureau was not permitted to increase Appellant's sentence. Appellees cite United States v. Wilson, ___ U.S. ___, 112 S.Ct. 1351, 117 L.Ed.2d 593, for the correct proposition that the Attorney General, not the district court, is empowered to calculate § 3568 credits after the prisoner begins to serve his sentence. Thereafter, courts are permitted to review the correctness of that calculation. Wilson, ___ U.S. at ___, 112 S.Ct. at 1352-1355. However, we are concerned here with the granting of a credit but rather with an increase in the term by a withdrawal of a credit. While it is true that § 3568 authorizes the Attorney General to "calculate" and "grant" the appropriate credit, the statute does not permit the Attorney General to unilaterally eliminate the credit by administrative action and increase a term once it has been provided

**1076**    **28 FEDERAL REPORTER, 3d SERIES**

expressly by the sentencing court. If the Attorney General felt that its power had been improperly usurped by the trial court by the granting of the credit, then the requisite course of action was to appeal the decision, not simply alter the sentence in accord with the Attorney General's analysis of what was the correct sentence.

Accordingly, Appellees' petition for rehearing is granted, and by this order we affirm and supplement our prior opinion and decision.

IT IS SO ORDERED.



**David E. ELLIOTT, Jr., an incapacitated adult By and Through his guardian, Barbara V. ELLIOTT, Barbara V. Elliott, Individually, Plaintiffs-Appellees,**

v.

**UNITED STATES OF AMERICA, Defendant-Appellant.**

No. 93-8027.

United States Court of Appeals, Eleventh Circuit.

July 28, 1994.

H. Randolph Aderholt, Jr., Asst. U.S. Atty., Macon, GA, Vicki Raines Crowell, Department of the Army, Office of the Staff Judge Advocate, Fort Benning, GA, Lowell V. Sturgill, Jr., U.S. Dept. of Justice, Robert S. Greenspan, Washington, DC, for appellant.

Paul Van Kilpatrick, Max Reginald McGhamry, Charles Neal Pope, Columbus, GA, Wade H. Tomlinson, III, Pope, McClamry, Kilpatrick & Morrison, Michael L. McGhamry, Steven W. Succoccia, Atlanta, GA, for appellee.

---

Appeal from the United States District Court for the Middle District of Georgia (No. 91-55-COL), J. Robert Elliott, Judge.

ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

(Opinion February 15, 1994, 13 F.3d 1555)

July 28, 1994.

Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.*

BY THE COURT:

A member of this court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges of this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the above cause shall be reheard by this court en banc. The previous panel's opinion is hereby VACATED.

**2**

**Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant.**

v.

**DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, STATE OF ALABAMA, Defendant-Appellee.**

No. 92-6978.

United States Court of Appeals, Eleventh Circuit.

Aug. 1, 1994.

The Secretary of Labor brought action against State Department of Conservation

---

and Natural Resources for infractions of overtime and record-keeping provisions of the Fair Labor Standards Act (FLSA). The United States District Court for the Middle District of Alabama, No. 90-V-00836-N, Robert E. Varner, J., held for Department. Secretary of Labor appealed. The Court of Appeals, Henderson, Senior Circuit Judge, held that: (1) promulgation of 40-hour work-week policy, coupled with ability of some conservation officers to comply with policy, did not insulate Department from liability; (2) knowledge of inconsistencies in time reports which revealed that certain officers were not reporting total number of hours they worked would be imputed to Department; and (3) violations were not willful, and thus were governed by two-year statute of limitations.

Affirmed in part; reversed and remanded in part.

**1. Labor Relations ⚲1270**

Employer's duty to inquire into conditions prevailing in his business is not eliminated, for purposes of FLSA's requirement that hours worked in excess of 40-hour workweek be compensated at rate not less than one and one-half times regular rate of pay, when extent of business may preclude employer's personal supervision and compel reliance on subordinates. Fair Labor Standards Act of 1938, § 7(a)(1), 29 U.S.C.A. § 207(a)(1).

**2. Labor Relations ⚲1270**

In reviewing extent of employer's awareness of overtime hours being worked, for purposes of FLSA liability, court need only inquire whether circumstances were such that employer either had knowledge of overtime hours being worked or else had opportunity through reasonable diligence to acquire knowledge. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219.

**3. Federal Courts ⚲754.1**

Appellate court has power to reverse district court's factual conclusion when it is predicated upon misapprehension of governing rule of law. Fed.Rules Civ.Proc.Rule 52(a), 28 U.S.C.A.

---

**1077**

**REICH v. DEPT. OF CONS. & NATURAL RESOURCES**
Cite as 28 F.3d 1076 (11th Cir. 1994)

**4. Federal Courts ⚲776**

Court of Appeals reviews district court's application of law to facts de novo.

**5. Labor Relations ⚲1270, 1295**

State Department of Conservation and Natural Resources' promulgation of 40-hour workweek policy coupled with ability of some conservation officers to comply with policy, did not insulate Department from liability for violation of overtime requirements of FLSA; in face of continued overtime activity during deer hunting season and Department's specific knowledge that policy against overtime was not being followed, Department had duty to do more than simply continue to apprise officers of policy. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219.

**6. Labor Relations ⚲1270**

Knowledge of inconsistencies contained in weekly and arrest reports of conservation officers, which revealed that certain officers were not reporting total number of hours they actually worked during hunting seasons should have been imputed to Department of Conservation and Natural Resources, for purposes of FLSA liability; Department specifically instructed supervisors to closely monitor officers' hours to ensure compliance with 40-hour workweek policy, and knew that such monitoring was not being done. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219.

**7. Labor Relations ⚲1567**

Court of Appeals reviews district court's findings on willfulness of FLSA violation under clearly erroneous standard. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219.

**8. Labor Relations ⚲1479**

Department of Conservation and Natural Resources' failure to correct conservation officers' habit of working, but not reporting, overtime, was not willful, and thus two-year statute of limitations governed FLSA claims. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219.

---

* Senior U.S. Circuit Judge Peter T. Fay has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. § 46(c).

either had personal knowledge of or acted in reckless disregard of the fact that the alien had unlawfully come to, entered or remained in the United States; 3) the defendant transported or moved the alien within the United States; and 4) the defendant acted in furtherance of the alien's violation of the law.

However, the Government concedes that the jury was not instructed that Hernandez-Garcia could be convicted if the aliens with Hernandez-Garcia had merely "come to" the United States. Instead, the jury was expressly instructed that in order to convict Hernandez-Garcia the jury would have to find that the undocumented Mexican nationals "entered the United States."

The majority holds that the official restraint instructions were superfluous "because to come *to* the United States is a step subsumed by 'entry'." (Emphasis in the original). However, this reasoning is circuitous because entry can only be found if there is an absence of official restraint. *See United States v. Ruiz-Lopez,* 234 F.3d 445, 448 (9th Cir.2000).

The majority's holding also ignores the fact that the indictment charged that the aliens "had come to, entered, **and** remained in the United States." (Emphasis added). Hernandez-Garcia was constitutionally entitled to have each element of the offense presented to the jury in the instructions. *See McCormick v. United States,* 500 U.S. 257, 269-70, 270 n. 8, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991); *see also United States v. Wiseman,* 274 F.3d 1235, 1241-42 (9th Cir.2001).

The official restraint instructions are problematic for an additional reason not discussed by the majority: they were erroneous. They required observation "by an agent who is reasonably able to apprehend the alien," a concept which appears nowhere in this circuit's jurisprudence.

Equally important, the instructions allowed the jurors to consider other factors we have not recognized, including:

"... the distance authorities were from the aliens, the amount of time the aliens were physically present within the United States prior to apprehension, the distance the aliens traveled into the United States, the characteristics of the area in which the aliens crossed the border and any other factor that bears on the issue." (Emphasis added).

Faced with these nebulous and erroneous instructions, I cannot comfortably rely on any finding of entry made by the jury in this case. In *Ruiz-Lopez,* we explained that to "enter" or be "found" an alien must be present in the United States free from official restraint. 234 F.3d at 448. Official restraint is construed "broadly to include constant government surveillance of an alien, regardless of whether the alien was aware of the surveillance or intended to evade inspection." *Id.* (citation omitted). "If a government official has an alien under surveillance from the moment he passes the port of entry until the moment of arrest, the alien has not 'entered' the United States—even if his arrest occurred at a point well past the port of entry—because the alien was under official restraint the whole time." *Id.* Notably, we did not require surveillance by the same agent who apprehends the alien.

The evidence presented at trial indicated that the aliens with Hernandez-Garcia were under constant surveillance either by the Pilot or Agent Serna from the time they crossed the border until the time of the arrest. The aliens, therefore, could not have entered the United States. Because the aliens had not entered the United States, Hernandez-Garcia could not have been guilty of transporting them

within the United States. Accordingly, I would REVERSE.

Miguel Lawayne TAYLOR, Petitioner-Appellant,

v.

Kathleen Hawk SAWYER, Director, Bureau of Prisons; David Cook, Director, Oregon Department of Corrections; Frank Thompson, Superintendent, Oregon State Penitentiary, Respondents-Appellees.

No. 01-35108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Filed March 28, 2002.

Federal prisoner filed a habeas corpus petition, alleging that the Bureau of Prisons (BOP) violated his constitutional rights when it refused to give effect to the concurrent service of his state and federal sentences. The United States District Court for the District of Oregon, Malcolm Marsh, J., denied the petition, and petitioner appealed. The Court of Appeals, Gould, Circuit Judge, held that: (1) BOP policy statement which provides that the BOP may make a nunc pro tunc designation of a state facility for service of a federal sentence does not expand a court's power to enter orders affecting a sentence after its imposition; (2) BOP's refusal to exercise its discretion to treat prisoner's federal and state sentences, in effect, as concurrent by designating a state facility

as the site for the service of the federal sentence was neither arbitrary nor capricious, despite allegedly expressed wishes of state court that sentences be concurrent; (4) principles of comity and federalism did not require that state's alleged request for concurrent sentence time be honored by BOP; and (5) failure to give effect to the state court judgment allegedly requiring that its sentence be concurrent with previously imposed federal sentence did not violate the Full Faith and Credit Clause.

Affirmed.

1. Criminal Law ⬤632(3.1)

"Nunc pro tunc" means "now for then," and when an order is signed nunc pro tunc as of a specified date, it means that a thing is now done which should have been done on the specified date.

See publication Words and Phrases for other judicial constructions and definitions.

2. Criminal Law ⬤243

A "writ ad prosequendum" allows a prisoner who is in one jurisdiction to be removed to another jurisdiction for prosecution of a crime within the second jurisdiction.

See publication Words and Phrases for other judicial constructions and definitions.

3. Sentencing and Punishment ⬤636

Where, at the time of the federal sentencing, the state had not yet imposed a sentence, the district court did not have the discretion to characterize the sentence it imposed as either consecutive or concurrent. 18 U.S.C.A. § 3584.

4. Prisons ⬤13.3

Bureau of Prisons (BOP) policy statement which provides that the BOP may

make a nunc pro tunc designation of a state facility for service of a federal sentence does not conflict with limitations on the authority of the federal courts to modify a sentence once it has been imposed, and does not expand a court's power to enter orders affecting a sentence after its imposition, but merely defines what the BOP can do if such an order is entered. 18 U.S.C.A. § 3582; Fed.Rules Cr.Proc. Rule 35(c), 18 U.S.C.A.

**5. Prisons ⟐13.3**

Designation by the Bureau of Prisons (BOP) of a state institution for concurrent service of a federal sentence is within the BOP's discretion and Court of Appeals cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy.

**6. Prisons ⟐13.3**

The refusal of the Bureau of Prisons (BOP) to exercise its discretion to treat prisoner's federal and state sentences, in effect, as concurrent by designating a state facility as the site for the service of the federal sentence was neither arbitrary nor capricious, despite allegedly expressed wishes of state court that sentences be concurrent, where the federal sentencing court had made it clear that it would not view the service of concurrent sentences as "consistent with the goals of the criminal justice system;" rather, given the express intent of the federal sentencing judge, the BOP was obligated by the terms of its policy statement to decline the requested designation.

**7. Sentencing and Punishment ⟐1175**

Refusal of the Bureau of Prisons (BOP) to give credit against federal sentence for time served on subsequently-imposed state sentence did not violate the doctrine of dual sovereignty, even if the state wanted its sentence to run concur-

rently with the pre-existing federal sentence.

**8. States ⟐18.63**

In sentencing those within their jurisdiction, the state and federal governments must be viewed as equal sovereigns.

**9. States ⟐18.63**

The federal system, under the dual sovereignty doctrine, has full power to set punishment for crimes against the federal sovereign, and so long as consistent with the federal Constitution, federal statutory and regulatory power to punish for federal crime is not constrained at all by state power.

**10. States ⟐18.63**

Principles of comity and federalism did not require that state's alleged request for concurrent sentence time be honored by the Bureau of Prisons (BOP), by giving credit against federal sentence for time served on subsequently-imposed state sentence.

**11. States ⟐18.63**

A state judge's imposition of a concurrent sentence on a defendant already subject to a federal sentence is nothing more than a recommendation to federal officials that federal officials are free to disregard.

**12. Judgment ⟐828.4(2), 828.8**

Failure of the Bureau of Prisons' (BOP) and the district court to use available procedures to give effect to the state court judgment allegedly requiring that its sentence be concurrent with previously imposed federal sentence did not violate the Full Faith and Credit Clause. U.S.C.A. Const. Art. 4, § 1.

**13. States ⟐5(2)**

Full Faith and Credit Clause requires each of the fifty states to give full faith and credit to the acts of the other states, but

imposes no obligation whatsoever on the federal government. U.S.C.A. Const. Art. 4, § 1.

**14. Judgment ⟐828.4(2)**

Full faith and credit doctrine applies to the recognition of civil judgments, and does not apply to either enforcement measures arising from civil judgments or the operation of state statutes. U.S.C.A. Const. Art. 4, § 1.

**15. Judgment ⟐828.4(2)**

Federal courts do not have an obligation, as a matter of full faith and credit, to enforce a state court criminal judgment. U.S.C.A. Const. Art. 4, § 1; 28 U.S.C.A. § 1738.

**16. Judgment ⟐828.4(2)**

Full faith and credit statute does not apply to an attempt to enforce a state criminal sentence so as to limit a federal sentence for a federal crime. 28 U.S.C.A. § 1738.

**17. Judgment ⟐828.4(2)**

As a general rule criminal judgments are not entitled to full faith and credit because no state is bound to enforce the penal laws of another state or to punish a person for a wrong committed against it. U.S.C.A. Const. Art. 4, § 1.

Steven T. Wax (argued), Assistant Federal Public Defender, Portland, OR, for the petitioner-appellant.

Michael Brown, Assistant United States Attorney, Portland, OR, for the respondent-appellee.

Appeal from the United States District Court for the District of Oregon; Malcolm F. Marsh, District Judge, Presiding. D.C. No. CV-00-01263-MA.

Before HUG, JR., T.G. NELSON, and GOULD, Circuit Judges.

**OPINION**

GOULD, Circuit Judge.

[1] Miguel Lawayne Taylor appeals the district court's denial of his 28 U.S.C. § 2241 habeas corpus petition. Taylor's petition sought an order directing the Federal Bureau of Prisons to designate an Oregon Department of Corrections facility for service of his federal sentence *nunc pro tunc* to May 10, 1993, thereby giving effect to an allegedly concurrent state sentence. Taylor contends that the Bureau of Prisons' denial of the request for designation was based on an invalid policy statement that he argues is contrary to the governing statutory law. He contends alternatively that the denial violates principles of dual sovereignty, comity, federalism, and full faith and credit.

The district court denied Taylor's petition for writ of habeas corpus. Taylor appeals. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 10, 1992, Miguel Taylor was indicted in the United States District Court for the District of Oregon for conspiring to distribute, and for distributing, crack cocaine. He was arraigned on August 3, 1992 and later released into the community. While on release, Taylor entered a guilty plea in the federal district

1. *Nunc pro tunc* is a Latin phrase meaning "now for then." Black's Law Dictionary (7th ed.1999). "When an order is signed 'nunc pro tunc as of a specified date,' it means that a thing is now done which should have been done on the specified date." *Id.* (quoting 35A C.J.S. Federal Civil Procedure § 370, at 556 (1960)).

court, admitting that he had distributed crack cocaine. The court continued Taylor's release on previously established conditions and ordered that he appear for sentencing on January 4, 1993. A few months later after the plea in federal court, on December 14, 1992, Taylor was arrested and held in custody by the State of Oregon on murder charges.

[2] At Taylor's request, the federal sentencing was rescheduled to May 10, 1993, when, although in state custody, he appeared before the federal court, on a *writ ad prosequendum*² and was sentenced to serve a 70 month term of imprisonment. The judgment and commitment order included the notation that "[w]ith the imposition of this sentence, the defendant is now in federal custody."³

Notwithstanding, Taylor remained in state custody and was thereafter tried in state court, convicted of manslaughter, and sentenced to imprisonment for a term of 115 months. The state court judgment said that the state sentence would run "concurrently with federal time." Taylor was then sent to the Oregon State Penitentiary, the Bureau of Prisons ("BOP") told Taylor that his federal sentence would not begin to run until he had been released by the state and taken into federal custody

On March 22, 1995, the Oregon Court of Appeals reversed Taylor's manslaughter

2. A writ *ad prosequendum* allows a prisoner who is in one jurisdiction to be removed to another jurisdiction for prosecution of a crime within the second jurisdiction. *Morgan v. United States,* 380 F.2d 686, 693 (9th Cir. 1967).

3. As discussed below, this Court held in *Taylor v. Reno,* 164 F.3d 440 (9th Cir.1998), that the district court's statement when sentencing Taylor as to his status "in federal custody" had no legal consequence because the district

conviction. Taylor remained in custody of the State of Oregon, however, until this case was tried a second time. The retrial resulted in Taylor's conviction once again of manslaughter, and he was again sentenced to serve a 115 month term of imprisonment. The state judgment imposed after Taylor's retrial did not refer to this outstanding federal judgment, and did not include the "concurrently with federal time" phrase that had been part of the earlier state judgment voided by the state appellate court decision of March 22, 1995.

Thereafter, while imprisoned by the state, Taylor filed petitions in the United States District Court for the District of Oregon, under 28 U.S.C. §§ 2241 and 2255. Taylor sought a transfer to federal custody and an order giving him credit against his federal sentence beginning on May 10, 1993. Alternatively, he wanted to vacate his federal conviction and/ or sentence. The district court denied Taylor's requests, clarifying:

[P]etitioner construes my statement that "[w]ith the imposition of this sentence, the defendant is now in federal custody" to be a pronouncement that petitioner's federal sentence commenced on May 10, 1993, despite his presence in state custody.... However, in light of 18 U.S.C. § 3585 (providing that a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives ... at, the official detention facility at which the

court lacked jurisdiction to commence the federal sentence because Taylor was then in the primary custody of the State of Oregon.

4. Although the sentence no longer specifically included the phrase "concurrently with federal time," the sentence would be concurrent under Oregon law because under Oregon Revised Statute 137.123(1), "[a] sentence shall be deemed to be a concurrent term unless the judgment specifically provides for consecutive sentences."

sentence is to be served"), a statement that petitioner's federal sentence commenced upon its entry is mere surplusage.

Taylor appealed this ruling. In a published opinion, *Taylor v. Reno,* 164 F.3d 440 (9th Cir.1998), we affirmed the judgment of the federal district court, holding that the district court's statement when sentencing Taylor on May 10, 1993, that upon the imposition of the sentence Taylor would be "in federal custody," was of no legal consequence. We held that the district court was without power to commence the federal sentence, given that Taylor was then in the primary custody of the State of Oregon. *Id.* at 445-46.

Following our affirmance, Taylor again sought to convert his federal sentence into a concurrent term of imprisonment by asking the district court to recommend that the BOP commence his sentence *nunc pro tunc* to May 10, 1993. The district court declined, stating that concurrent service of the sentences "would depreciate the seriousness of both the state and federal offenses."

Next, in an effort to secure credit against his federal sentence, Taylor asked the Oregon Department of Corrections ("DOC") to request that the BOP designate a DOC facility for service of his federal sentence. The DOC requested, in letters to the BOP forwarded on October 15, 1999 and again on February 18, 2000, that it be designated as the "primary custodian for [Taylor's] federal term." The Regional Director of the BOP denied this request stating:

[T]he records provided to us by the United States District Court of Oregon did not indicate the Federal offense would run concurrently with the State offense. Therefore, the Federal offense runs consecutively. [Taylor] will not be taken into the BOP until he completes

his State sentence or until other arrangements are made. Finally, Mr. Taylor will not receive credit for his Federal sentence at this time. Time served cannot be credited until he is in Federal custody.

By September 15, 2000, Taylor had completed his state sentence, was released to federal authorities, and commenced serving his federal sentence at the Federal Correctional Institution, Sheridan, Oregon.

Taylor then filed this habeas corpus petition pursuant to 28 U.S.C. § 2241. He alleged that the BOP violated his constitutional rights when it refused to give effect to the concurrent service of Taylor's state and federal sentences. The district court rejected Taylor's claims, holding that the BOP's refusal to treat the state and federal sentences as concurrent did not violate the concepts of comity and full faith and credit. And the district court held that the BOP's decision was neither arbitrary nor capricious, in light of the repeated refusals of both the state and federal courts to take any of the actions requested by Taylor that would have effectively produced concurrent sentences. The court concluded that it lacked jurisdiction to compel the requested *nunc pro tunc* designation.

Taylor appeals. Pursuant to 28 U.S.C. §§ 1291 and 2253, we have jurisdiction over Taylor's appeal.

DISCUSSION

I.

We review *de novo* the denial of a petition filed under 28 U.S.C. § 2241. *Bowen v. Hood,* 202 F.3d 1211, 1218 (9th Cir. 2000).

Taylor argues that the actions of the BOP in refusing to commence the running of Taylor's federal sentence or to accept

**1148**            **284 FEDERAL REPORTER, 3d SERIES**

the State of Oregon's request for a *nunc pro tunc* designation are based on a misunderstanding of the federal court order that sentenced him and of the federal court order that the federal sentencing judge possessed when he imposed the sentence.

The statute that governs the manner in which multiple sentences of imprisonment may be imposed is 18 U.S.C. § 3584, which states in subsection (a):

Imposition of concurrent or consecutive terms: If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. *Multiple terms of imprisonment imposed at different times run concurrently unless the court orders that the terms are to run consecutively.*

18 U.S.C. § 3584(a) (emphasis added).

[3] Based on the plain language of the statute, we have held on several occasions that the district courts cannot order a sentence to run either concurrently or consecutively to a non-existent term. *United States v. Neely*, 38 F.3d 458, 461 (9th Cir.1994); *United States v. Clayton*, 927 F.2d 491, 492 (9th Cir.1991). At the time

[5] Taylor also argues that Policy Statement § 5160.04(9)(c) is inconsistent with 18 U.S.C. § 3582 and Fed.R.Crim.P. 35(c) because it provides for entry of a court order affecting a sentence after its imposition. Under 18 U.S.C. § 3582 and Fed.R.Crim.P. 35(c), the law limits the authority of the federal courts

of the federal sentence, the state had not yet imposed a sentence, and thus the district court did not have the discretion to characterize the sentence it imposed as either consecutive or concurrent. 18 U.S.C. § 3584.

[4] Taylor argues that BOP Policy Statement § 5160.04, which provides that the BOP may make a *nunc pro tunc* designation of a state facility for service of a federal sentence, is invalid because it is contrary to the plain meaning of 18 U.S.C. § 3584. Taylor argues that "[c]ontrary to the plain language of § 3584(a) and absence of authority to act, the BOP requires a federal court to order concurrency in express terms even when a federal sentence is imposed at a time when no state sentence exists before it will acknowledge that a state sentence is to be served concurrently." [6] Taylor is mistaken.

[5] [3] BOP Policy Statement § 5160.04 grants the authority to designate a state institution for "concurrent service of a Federal sentence" to the Bureau's Regional Directors "when consistent with the intent of the sentencing Federal court." Under the BOP policy statement, there are several paths that can lead to the designation of a state facility for concurrent service of a federal sentence. The designation can be made under circumstances including: (1) if a defendant serving a state sentence is sentenced by a federal judge who orders the federal sentence to run concurrently with a preexisting state sentence, BOP Policy Statement § 5160.04(9)(a) & (b); (2) if the federal court orders concurrent service of the fed-

to modify a sentence once it has been imposed. However, the policy statement does not conflict with these limitations and does not expand a court's power to enter orders affecting a sentence after its imposition. It merely defines what the BOP can do if such an order is entered.

---

**TAYLOR v. SAWYER**            **1149**
Cite as 284 F.3d 1143 (9th Cir. 2002)

eral sentence at some time after the initial imposition, BOP Policy Statement § 5160.04(9)(c) [4]; (3) if an inmate requests a *nunc pro tunc* designation and the district court does not object, BOP Policy Statement § 5160.04(9)(d); and (4) if a "state jurisdiction" makes a "request" that state and federal sentences be treated as concurrent terms of imprisonment, BOP Policy Statement § 5160.04(9)(e).

But in any case the designation of an appropriate state institution for service of a "concurrent" federal sentence must be "in compliance with applicable statutes, court order or recommendations, and the goals of the criminal justice system," and "will only be made when it is consistent with the intent of the sentencing Federal court." BOP Policy Statement § 5160.04(9). The policy statement's focus on the federal sentencing court's intent is consistent with the statute's provision that sentences "imposed at different times [are to] run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). Equally important, such a designation by the BOP is plainly and unmistakably within the BOP's discretion and we cannot, lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy. *See McCarthy v. Doe*, 146 F.3d 118, 123 (2d Cir.1998) (BOP is given broad discretion to grant or deny a request for *nunc pro tunc* relief

[6] For example, a designation at some time later than the initial imposition might make sense when "primary jurisdiction resided with the state, and the court mistakenly believed that the inmate was in Federal custody for service of the Federal sentence on the date of imposition." BOP Policy Statement § 5160.04(9)(c). In that case the BOP may exercise its discretion to avoid a result unintended by the federal sentencing judge.

after the request is given "full and fair consideration"); *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir.1990) (decision to grant *nunc pro tunc* relief is within the discretion of the BOP). We hold that the BOP's choice here to exercise its discretion, in part by relying upon the intent of the sentencing court, is not inconsistent with 18 U.S.C. § 3584.

II.

[6] Furthermore, the refusal of the BOP to exercise its discretion to treat Taylor's sentences, in effect, as concurrent by designating a state facility as the site for the service of the federal sentence was neither arbitrary nor capricious. The federal sentencing court had made it clear, at least since December, 1993, that it would not view the service of concurrent sentences as "consistent with the goals of the criminal justice system," noting that the conversion of Taylor's sentences into concurrent terms would only serve to "depreciate the seriousness of both the state and federal offenses." Given the express intent of the federal sentencing judge, the BOP was obligated by the terms of its policy statement to decline the requested designation.

This case is similar to *Del Guzzi v. United States*, 980 F.2d 1269 (9th Cir. 1992).[7] There the defendant pled guilty to counterfeiting charges in federal court and

which has been repealed and replaced with 18 U.S.C. § 3585. The old statute contained the prohibition that "[n]o sentence shall prescribe any other method of computing the term [of imprisonment]," whereas the new statute does not. Taylor argues that based on this deletion, when a state sentence prescribes how a term of imprisonment will run, there is now no statutory prohibition against deferring to that sentence. Taylor cites to no cases to support his position and we reject it. Moreover, in *Del Guzzi* we did not rely on the statutory phrase that has been deleted.

was sentenced to a five-year term. *Del Guzzi*, 980 F.2d at 1270. The sentencing judge ordered the defendant to self-surrender to federal officials the next month. *Id.* Before he was due to turn himself in, the defendant was arrested and charged with a California drug violation. *Id.* He pled guilty and the state court judge sentenced him to a seven-year term, to run concurrently with the pending five-year federal term. *Id.* The state judge recommended that the defendant be transported to federal prison to serve his concurrent terms. *Id.* Federal officials declined to accept him, on the ground that they would take custody of the defendant only upon completion of his state sentence. *Id.* After Del Guzzi completed his state sentence, he immediately began petitioning federal prison officials to credit his state time against his federal sentence. *Id.* His requests were consistently denied. *Id.* After exhausting his administrative remedies, Del Guzzi brought a *pro se* habeas petition which the district court denied. *Id.* We affirmed the denial of habeas relief. *Id.* at 1271. In his concurrence, Judge Norris explained:

> Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of the state sentencing judges that a prisoner be transported to a federal facility. Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. These officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

*Del Guzzi*, 980 F.2d at 1272–73 (Norris, J. concurring).

8. See Footnote 4 above.

We agree with and adopt this reasoning. The BOP was under no obligation to follow the allegedly expressed wishes of the state court and the BOP's actions in this case were not arbitrary or capricious.

III.

A. Dual Sovereignty

[7] Taylor argues that the federal administrative action, which did not give effect to the state sentence he contends was concurrent,[8] violates the doctrine of dual sovereignty.

[8] In assessing the execution of state and federal criminal sentences, we have said that our federal system is one of "dual sovereignty," and not one in which the Supremacy Clause controls sentencing. *Strand v. Schmittroth*, 251 F.2d 590, 605 (9th Cir.1957) ("[T]here is no 'federal supremacy' in the corner of the field which is specifically under consideration"). In setting those within their jurisdiction, the state and federal governments must be viewed as equal sovereigns.

> We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same person and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.

*Ponzi v. Fessenden*, 258 U.S. 254, 259, 42 S.Ct. 309, 66 L.Ed. 607 (1922).

Taylor purports to recognize that "[u]nder the dual sovereignty doctrine, a criminal defendant owes a debt to two (or more) separate sovereigns, each of which may exact payment independently of the other. *See, e.g., Heath v. Alabama*, 474 U.S. 82, 88–89, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Jackson v. Brennan*, 924 F.2d 725, 729 (7th Cir.1991)." Taylor also acknowledges that the dual sovereignty doctrine has been held by another circuit to be justification for the BOP's refusal to give inmates credit against their federal sentences for time served in a state or foreign prison. *See, e.g., Kendrick v. Carlson*, 995 F.2d 1440, 1445–46 (8th Cir.1993). But contrary to this authority, Taylor argues that under the dual sovereignty doctrine the BOP must give effect to a state sentence that is ordered to run concurrently with a pre-existing federal sentence. In this contention Taylor is completely mistaken.

[9] The federal system under the dual sovereignty doctrine has full power to set punishment for crimes against the federal sovereign. So long as is consistent with the federal Constitution, federal statutory and regulatory power to punish for federal crime is not constrained at all by state power. If a state court were allowed to force a federal court to run its federal sentence concurrent to a state sentence, the state would clearly be encroaching on the federal court's right to "exact" payment independent of" the state. Taylor's position is not supported by the dual sovereignty doctrine; to the contrary, his novel contention would offend and erode the doctrine of dual sovereignty. We hold that the federal administrative action by the BOP in not giving effect to a state

sentence of Taylor, if assumed to be a sentence that the state wanted to run concurrent to the federal sentence, does not violate the doctrine of dual sovereignty.

B. Comity and Federalism

[10] Taylor next argues that principles of comity and federalism combine to require that Oregon's request for concurrent sentences time be honored. Taylor contends correctly that we have held that when a federal court imposes its sentence first, it has no authority to order that sentence to run either consecutively or concurrently to a state sentence which had not yet been imposed. Such an act would "preempt the right of the state to apply its own laws on sentencing for violation of state criminal laws." *United States v. Eastman*, 758 F.2d 1315, 1317–1318 (9th Cir.1984) (remanding for resentencing where defendant received a sentence in federal court to a five-year term to run consecutively "to any sentence that the defendant receives from the State of California"). From this, Taylor argues, incorrectly that the BOP, in administering a federal sentence, should not be allowed to disregard a state court's alleged order of concurrency. Taylor contends that the challenged federal agency action governing Taylor's federal imprisonment is preempting what he claims are rights of the state court. However, Taylor's argument has no persuasive support in constitutional principle, consistent practice or established case law.

[11] In our federal system, state courts are not constitutionally empowered to control punishment for federal crimes, nor have our states and federal government ever recognized such a practice. As an example, in *Del Guzzi*, we explicitly held that the BOP does not need to abide by a state's express desire to have its sentence run concurrent to a state

federal sentence.[9] *Del Guzzi,* 980 F.2d at 1270. In his concurrence, consistent with the majority opinion, Judge Norris stated that a state judge's imposition of a concurrent sentence is nothing more than a recommendation to federal officials that federal officials are free to disregard. *Del Guzzi,* 980 F.2d at 1272–73 (Norris, J. concurring).

We agree with this reasoning. Forcing the federal judiciary to adhere to the wishes of the state courts regarding punishment of those in federal jurisdiction because of federal crime would impinge on the rights of the federal judiciary to apply its own sentencing laws for violation of federal criminal laws. Taylor's argument has no merit.

### C.  Full Faith and Credit

[12]  Taylor also argues that the failure of the BOP and the district court to use available procedures to give effect to the state court judgment allegedly requiring concurrent sentences[10] violates the Full Faith and Credit Clause.

[13]  Article IV, Section 1, of the United States Constitution provides that:

Full Faith and Credit shall be given each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings, shall be proved, and the Effect thereof. The literal language of this ancient, guarantee in our Constitution leaves no ambiguity on the point urged by Taylor. The first sentence of this guarantee is clear that it does not bind the federal government but the many states. In context, it

each of our fifty states who must give full faith and credit to the acts of the other states. The purpose of this clause was evidently to ensure a measure of unity for the United States by requiring each, formerly independent State to respect, and give credit to the judgments of the others. By its terms, and in light of its purpose, the Full Faith and Credit Clause imposes no obligation whatsoever on the federal government. *See Baker v. Gen. Motors Corp.,* 522 U.S. 222, 232–34, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("The Full Faith and Credit Clause is of course not binding on federal courts ...."). The Full Faith and Credit Clause is not violated, if, the BOP, a federal government agency, chooses not to give effect to a state court judgment requiring concurrent sentences.

The second sentence of Article IV, Section 1, however, authorizes Congress to adopt federal statutes that may implement, if not elaborate on, the Full Faith and Credit Clause. Pursuant to this authority, the first Congress implemented and extended the Full Faith and Credit Clause in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." The Act thus binds federal courts.

[14]  However, it has been held that the Act does not apply to federal executive branch agencies and to courts reviewing

---

9.  As discussed in footnote 7, Taylor erroneously argues that reliance on *Del Guzzi* is misplaced because that case involved sentences governed by 18 U.S.C. § 3586 (1982).

10.  *See Footnote 4 above.*

cases in which the relief sought is an order for an action by a federal executive agency. *See NLRB v. Yellow Freight Sys., Inc.,* 930 F.2d 316, 320 (3d Cir.1991). Further, as the Supreme Court has explained recently, although the full faith and credit doctrine applies to the recognition of civil judgments, it does not apply to either enforcement measures arising from civil judgments or the operation of state statutes. *Baker,* 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (holding that a federal court in Missouri was not obligated to give full faith and credit to a consent judgment entered by a Michigan state court). In resolving *Baker,* the Supreme Court concluded that one state's judgment cannot be used to control litigation in other courts absent both parties having been before the court in both litigations. *Id.* at 239, 118 S.Ct. 657.

[15]  It follows, under *Baker,* that federal courts do not have an obligation, as a matter of full faith and credit, to enforce a state court criminal judgment, because the United States is generally not a party to the state criminal proceeding. State and federal criminal prosecutions involve distinct parties, and consequently the enforcement of a state criminal judgment is not required when that enforcement would

intrude upon the execution of a distinct federal criminal judgment.[11]

[16, 17]  We hold that the Act does not apply to an attempt to enforce a state criminal sentence to limit a federal sentence for a federal crime. This is so because the state sentence is based on a state prosecution in which the federal government, including its Bureau of Prisons (a federal executive agency), was not and could not have been a party.[11] The Full Faith and Credit Clause of the United States Constitution nor the Act of May 26, 1790, was violated in this case.

### CONCLUSION

The policy statement relied on by the BOP is not inconsistent with federal law and the BOP's decision not to grant *nunc pro tunc* designation was not arbitrary or capricious. The principles of dual sovereignty and comity and federalism do not support Taylor's position. Nor does the Full Faith, and Credit Clause provide grounds for Taylor's claim.

**AFFIRMED.**



11.  Also, as a general rule criminal judgments are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it. *See Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) (the Full Faith and Credit Clause does not require that a sister state enforce a foreign penal judgment). The reason is that each sovereign is free to determine what conduct shall be proscribed within its jurisdiction, and the wrong committed by violating such proscription is local and does not transcend the sovereignty. The United States Supreme Court has held that States can deny recognition to judgments issued by another State which assess penalties against a criminal defendant. *See e.g. Wisconsin v. Pel-*

*ican Ins. Co.,* 127 U.S. 265, 290, 8 S.Ct. 1370, 32 L.Ed. 239 (1888) *overruled on other grounds by Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935). Applying this general rule, courts have held that a State need not give full faith and credit to another jurisdiction's directive that sentences run concurrently. *See People v. Alba,* 189 Misc.2d 258, 730 N.Y.S.2d 191, 199 (N.Y.Sup.Ct.2001); *Chalifoux v. Commissioner of Corr.,* 375 Mass. 424, 377 N.E.2d 923, 926 (1978); *Breeden v. New Jersey Dep't of Corr.,* 132 N.J. 457, 625 A.2d 1125, 1128–29 (1993). This principle—that the full faith and credit doctrine does not require recognizing limitations on criminal sentencing power—also requires rejection of Taylor's claim under the Full Faith and Credit Clause.

montis. The court sentenced Taylor to 151 months of imprisonment followed by a five-year term of supervised release. The court also imposed a $25,000 fine and a $50 special assessment. Taylor timely filed this appeal.

After filing this appeal but before briefing, Taylor filed a motion with the district court to withdraw his plea, which the district court construed as a 28 U.S.C. § 2255 motion. The district court denied that motion without prejudice, stating that Taylor's direct appeal to this Court had divested the district court of jurisdiction over the motion. The parties then filed their briefs with this Court, embracing within this appeal the issues raised in Taylor's § 2255 motion.

## II. DISCUSSION

One of the issues raised in Taylor's § 2255 motion is whether the government breached its plea agreement with Taylor by advocating the PSI's position on related conduct, the adoption of which resulted in a sentence thirty-one months longer than the ten years the government had agreed to recommend. Resolution of that issue disposes of this entire appeal.

### A.

[1, 2] The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty. *E.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *see also United States v. Boatner,* 966 F.2d 1575, 1578 (11th Cir.1992); *United States v. Corcarena,* 921 F.2d 1557, 1568 (11th Cir.), *cert. denied,* 502 U.S. 865, 112 S.Ct. 190, 116 L.Ed.2d 152 (1991). Furthermore, "whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *Boatner,* 966 F.2d at 1578; *see also Bemis,* 966 F.2d at 988.

[3] In this case, the government unequivocally promised that it would "make[] a recommendation at the time of sentencing that the defendant be sentenced to a period of incarceration of ten years," with the only qualification being that it would recommend a sentence of less than ten years if Taylor provided assistance to the government (something that never occurred). It was entirely reasonable for Taylor to understand the government's promise to recommend a ten-year sentence as including a promise not to advocate that the court adopt a position that would require a greater sentence than ten years. Indeed, that is the only reasonable interpretation. Advocacy of a position requiring a greater sentence is flatly inconsistent with recommendation of a lesser sentence.

In the similar case of *Boatner,* we held that when the government's statements regarding the PSI are inconsistent with the plea agreement, the government has breached that agreement. 966 F.2d at 1578-79; *see also United States v. Jefferies,* 908 F.2d 1520, 1527 (11th Cir.1990) (holding that when plea agreement stipulates a particular fact, the government cannot later argue in contradiction of that fact); *United States v. Tobon-Hernandez,* 845 F.2d 277, 280 (11th Cir.1988) (same). In *Boatner,* the government had stipulated in the plea agreement that two ounces of cocaine would be the only quantity considered for sentencing purposes. Even so, "the government supported the information contained in the presentence investigation report by declaring to the court that its later investigations had revealed that, the amount of cocaine involved was actually between two and three-quarters and three kilograms." 966 F.2d at 1579. We held that because the information concerning two, to three kilograms of cocaine was specifically precluded by the plea agreement, the government had breached that agreement, by supporting the information contained within the PSI. *Id., see also United States v. Canada,* 960 F.2d 263, 265 (1st Cir.1992) (holding that government breached the plea agreement when, at the sentencing hearing, it "affirmatively supported a higher sentence than that upon which the parties had agreed"

and "failed to apprise the court of [the defendant's] cooperation").

Although we recognize that *Boatner* involved the breach of a factual stipulation contained within the agreement, whereas this case involves a breach of a promise to recommend a particular sentence, we think the reasoning of *Boatner* applies equally in this case. In both situations, the defendant reasonably relied upon a promise made by the government in the plea agreement, and in both situations the government advocated a position taken in the PSI that was incompatible with fulfillment of the promise.

Our holding in *United States v. Grandinetti,* 564 F.2d 723 (5th Cir.1977), also supports our conclusion that the government breached the plea agreement in this case. The attorney who represented the government at a probation revocation hearing in *Grandinetti* "acted as though he had never seen the [plea] agreement." *Id.* at 725. Upon reading the agreement, the government attorney commented to the court that, he thought based upon the plea agreement, that "the Government is locked-in to the language of that thing," even though he was "not too sure of the legality of it nor the propriety." *Id.* Based upon the government's conduct, we held that "the defendant did not receive the benefit of his bargain" because the government was "not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it." *Id.* at 727.

Here, the government similarly failed to carry out its part of the plea agreement. In its statements responding to Taylor's objections to the PSI, the government advocated a position contrary to its agreed-upon recommendation. If anything, the government's breaching statements in this case are more egregious than those made in *Grandinetti,* because here the government affirmatively supported a position inconsistent with the plea agreement, whereas in *Grandinetti* it merely bad-mouthed the agreement. *Id.* at 725; *accord Canada,* 960 F.2d at 269 (stating that the government's "overall conduct must be reasonably consistent with making such a recommendation"). During oral argument, the government conceded that its support of the PSI's position on related conduct was

"completely incompatible" with the terms of the plea agreement, but argued that any breach was cured when the government did recommend at the sentencing hearing a ten year sentence. We disagree. That recommendation, which merely paid "lip service" to the agreement, is insufficient to rectify the breach committed when the government advocated a position requiring a longer sentence than it had agreed to recommend. In *Canada,* the First Circuit held under almost identical facts that the "lip service" the government paid the agreement did not cure its breach. 960 F.2d at 269. Likewise, in *Grandinetti* the fact that the government ultimately and grudgingly made the recommendation it had agreed to make did not persuade us that the breach had been cured. Here, as in *Grandinetti* and *Canada,* the government's begrudging recommendation was too little, too late to undo the effect of its breach.

The government also suggests that the district court may not have considered the government's breaching statements when it determined Taylor's sentence in this case. We are not convinced that would matter. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 499 (remanding case even though Court had "no reason to doubt" the sentencing judge's statement that "the prosecutor's recommendation did not influence him"); *Tobon-Hernandez,* 845 F.2d at 280 (holding that "the district court's abstention from consideration of the contrary facts was insufficient" to rectify the breach). In any event, there is no indication that the court did not consider those breaching statements when it determined, to Taylor's detriment, that the PSI position on relevant conduct was correct. Presumably the government attorney who made those statements thought that they might influence the judge, or else there would have been no point in making them. Absent some reason in the record for second guessing that government attorney's evaluation of the possible effect of his advocacy, we are unwilling to conclude that it had no effect.

### B.

[4] There are two remedies available in this situation. We can leave the guilty plea

Plea Agreement
U.S. v. Wilkins Maldonado Garcia
Criminal No. 99-322(PG)
Page 6

12. The parties to this agreement reserve their respective rights and responsibilities under the Sentencing Guidelines. For example, the UNITED STATES reserves the right: to bring its version of the facts of this case (including any investigative files) to the attention of the probation office in connection with that office's preparation of a presentence report; to dispute sentencing factors or facts material to sentencing; and to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

13. The parties additionally understand that the defendant shall administratively receive credit pursuant to 18 U.S.C. § 3585 (b) for any time spent in official detention–including time spent in the custody of the Commonwealth of Puerto Rico–as a result of the offenses charged in Count One and /or Count Two, provided that such official detention has not been credited against another sentence. While any such credit is to be administratively assessed by the Bureau of Prisons, see United States v. Wilson, 503 U.S. 329 (1992), the parties stipulate that the defendant spent time in the custody of the Commonwealth of Puerto Rico as a result of the offense charged in Count One, and request that the Court include in its Judgment a recommendation that the Bureau of Prisons inquire into this matter.

14. Defendant represents to the Court that he is satisfied with his attorney, Gabriel Hernandez Rivera, and affirmatively states that his attorney has rendered effective legal assistance.